**Mary GREEN, Plaintiff,**

v.

**HUGHES AIRCRAFT COMPANY, and ARA Services, Inc., Defendants.**

**Civ. No. 85–0477–E.**

United States District Court, S.D. California.

July 22, 1985.

D. Blake Martinson, Vista, Cal., for plaintiff Mary Green.

Albert T. Harutunian III of Luce, Forward, Hamilton & Scripps, San Diego, Cal., for defendant ARA Services, Inc.

Richard A. Conn, Jr. and Mark S. Pulliam of Latham & Watkins, San Diego, Cal., for defendant Hughes Aircraft Co.

## MEMORANDUM DECISION

ENRIGHT, District Judge.

### BACKGROUND

Plaintiff filed this action in California Superior Court alleging against her em-

ployer Hughes Aircraft Company ("Hughes") and a company operating a Hughes employee cafeteria, ARA Services, Inc. ("ARA"), claims sounding in defamation. She seeks an award of damages for written and oral statements concerning allegations that she stole a sandwich.

Defendants uncontroverted affidavits state that for weeks prior to May 9, 1984, cafeteria employees regarded plaintiff's conduct as "suspicious." On May 9, 1984, two of those employees reportedly observed plaintiff taking a sandwich without paying for it. They reported the incident to Hughes Security, giving handwritten statements.

Because plaintiff was a member of the collective bargaining unit represented by the Electrical and Space Technicians Local No. 1553, AFL–CIO ("Union"), Hughes management consulted with the Union before acting. Following a preliminary investigation, plaintiff was suspended. The allegations, if proven, were grounds for discharge under the collective bargaining agreement.

On May 11, 1984, plaintiff filed a grievance under the collective bargaining agreement's exclusive grievance/arbitration mechanism which, by its terms, governs all disputes arising out of the collective bargaining relationship. This indisputably included disputes involving the imposition of discipline.

During the course of the continuing investigation, Hughes management and a union representative jointly interviewed the percipient witnesses, ARA employees. In light of conflicting statements, Hughes decided not to pursue the matter. On May 21, 1984, Hughes reinstated plaintiff with back pay, overtime, and a formal letter of apology. On November 19, 1984, the union withdrew plaintiff's grievance, at which time she filed this action. Following service of process on January 7, 1985, Hughes removed the matter, alleging federal question jurisdiction under Section 301 of the Labor Management Relations Act (LMRA), 29 U.S.C. § 185. Defendants contend that plaintiff's exclusive remedy is the griev-

ance/arbitration mechanism under her collective bargaining agreement, and a § 301 action for breach of that agreement. They assert that the federal remedy preempts state claims for defamation.

ARA, which is not a party to the governing collective bargaining agreement, claims that, in reporting plaintiff to Hughes Security, it was acting on Hughes' behalf and in furtherance of Hughes' monetary and disciplinary interests. It claims its alleged culpable conduct was taken as Hughes' agent, and that it should be treated the same as Hughes for preemption purposes. ARA's affidavit indicates that it was contractually obligated to abide by Hughes' regulations, to keep Hughes apprised of matters relating to food sales, and to refer security matters to Hughes concerning personnel and food sales. It also indicates that Hughes owns the cafeteria equipment, maintains the facilities, shares in gross income, and approves prices.

Both ARA and Hughes additionally contend that the statements at issue are privileged under federal law. Each moves for summary judgment.

## DISCUSSION

Summary judgment is proper when there is no genuine issue of material fact and the moving party is entitled to prevail as a matter of law. Fed.R.Civ.P. 56(c). Once the moving party has met his initial evidentiary burden of showing that his motion is properly supported, his adversary must come forward with specific facts that there remains a genuine factual issue for trial. Fed.R.Civ.P. 56(e). The opponent may not rest on his pleadings; he must offer some significant evidence as to any fact claimed to be disputed. *See, e.g., British Airways Bd. v. Boeing Co.*, 585 F.2d 946, 951 (9th Cir.1978), *cert. denied*, 440 U.S. 981, 99 S.Ct. 1790, 60 L.Ed.2d 1074 (1979).

Plaintiff's opposing evidence consists of a short affidavit wherein she repeats the essential allegations of her complaint, concluding that she was defamed because of Hughes' "manner of investigation" and

"initial [unreasonable] handling of the theft allegation." Accordingly, except for ultimate conclusions, the parties agree on the operative facts.

### ARA's Agency

■ Because ARA is not a party to the bargaining agreement, it may only benefit from rights thereunder if it is shown that it took alleged actionable conduct as Hughes' agent. It contends that agency principles generally applicable at common law apply with equal force to assess rights and responsibilities under the LMRA. The court agrees. Section 301 provides in part that an employer "shall be bound by the acts of its agent," and that, in determining agency, no special significance need be placed on considerations of actual authorization or subsequent ratification. 29 U.S.C. § 185(b), (e); *see also United Mine Workers v. Gibbs*, 383 U.S. 715, 736, 86 S.Ct. 1130, 1144, 16 L.Ed.2d 218 (1966); *International Longshoremen's & Warehousemen's Union v. Juneau Spruce Corp.*, 189 F.2d 177, 190 (9th Cir.1951), *aff'd*, 342 U.S. 237, 72 S.Ct. 89, 96 L.Ed. 645 (1952). Defendant ARA's uncontroverted evidentiary showing sufficiently establishes its agency status in reporting the alleged theft to Hughes. *See, e.g., Sturdivant v. Seaboard Service System, Ltd.*, 459 A.2d 1058, 1060 (D.C.App.1983) (security firm acted as employer's agent in reporting employee's theft). ARA and Hughes accordingly stand on equal footing for purposes of preemption analysis.

### Federal Preemption

■ Section 301 of the LMRA vests jurisdiction in the federal courts for actions properly classified as claims for breach of a collective bargaining agreement. Under the artful pleading doctrine, federal courts will recast as a § 301 action claims based on state contract or tort theories where the gravamen of the complaint concerns an employment relationship governed by provisions of a collective bargaining agreement. *Olguin v. Inspiration Consol. Copper Co.*, 740 F.2d 1468, 1472–73 (9th Cir.1984) (tort claims for wrongful discharge and intentional infliction of emotional distress construed as § 301 action); *Buscemi v. McDonnell Douglas Corp.*, 736 F.2d 1348, 1351 (9th Cir.1984) (wrongful discharge and intentional infliction of emotional distress recharacterized under § 301); *Fristoe v. Reynolds Metals Co.*, 615 F.2d 1209, 1212 (9th Cir.1980) (wrongful discharge claim recharacterized).

The Supreme Court recently addressed § 301 preemption on divergent facts in *Allis-Chalmers Corp. v. Lueck*, — U.S. —, 105 S.Ct. 1904, 85 L.Ed.2d 206 (1985). That decision is somewhat instructive.

> If the policies that animate § 301 are to be given their proper range ... the preemptive effect of § 301 must extend beyond suits alleging contract violations. These policies require that 'the relationships created by [a collective bargaining] agreement' be defined by application of 'an evolving federal common law grounded in national labor policy. [Citation.]'
>
> ....
>
> Of course, not every dispute concerning employment, or tangentially involving a provision of a collective bargaining agreement, is pre-empted by § 301.... Our analysis must focus, then, on ... whether evaluation of the tort claim is inextricably intertwined with consideration of the terms of the labor contract.

*Id.* 105 S.Ct. at 1911–12.

■ Turning to plaintiff's claim, there is no dispute that the alleged defaming statements are those concerning the purported theft of a sandwich. Plaintiff has not controverted defendants' showing that these statements were uttered and published within the context of the incident's initial report and subsequent investigation. Nor has plaintiff controverted defendants' showing that the discipline of a unit employee is governed by the controlling collective bargaining agreement. That agreement contains provisions for discipline for just cause, and for grievance/arbitration of disputes arising out of the collective bargaining relationship. Accordingly, the

statements plaintiff challenges are central rather than tangential to rights and procedures provided under the collective bargaining agreement. They intertwine not only with management's right to discipline for cause, but also with labor and management's right to resolve disputes openly in accordance with their private agreement. As such, countenance of the instant tort claim would impinge upon the primary federal labor policy favoring the expeditious resolution of labor disputes by private grievance/arbitration.

Removal of this action was proper, and plaintiff's claim must be recharacterized as one pursuant to § 301 of the LMRA (29 U.S.C. § 185).[1]

■ Section 301 provides only a limited remedy, however. "When a collective bargaining agreement provides that arbitration will be the exclusive remedy for employee grievances, an employee may not bring an action against the employer in lieu of seeking arbitration." *Vaca v. Sipes,* 386 U.S. 171, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967); *Fristoe v. Reynolds Metals Co.,* 615 F.2d 1209, 1212 (9th Cir.1980). Only where the plaintiff can plead and prove that the union breached its fair representation duty in its handling of her grievance is a § 301 claim actionable. *Fristoe v. Reynolds, supra,* 615 F.2d at 1214–15; *Olguin v. Inspiration Consol. Copper Co., supra,* 740 F.2d at 1476.

As indicated above, shortly after plaintiff's suspension, she filed a grievance. Within a week, plaintiff's union and Hughes had concluded joint interviews of percipient witnesses. As a result of this orderly procedure, the union persuaded Hughes to reinstate plaintiff with full back wages, overtime, and a letter of apology.

Plaintiff exhausted her grievance/arbitration remedy and, with her union's assistance, she substantially prevailed.

■ The evidence defendants submit documenting this result and the apparent prompt, fair, and effective representation provided by the union, shift to plaintiff the burden of coming forward with evidence showing the union's investigation of her grievance arbitrary, discriminatory, or in bad faith. *Fristoe v. Reynolds Metals Co., supra,* 615 F.2d at 1214–15. Because plaintiff does not allege, much less attempt on this motion to demonstrate, the union's unfair representation, she fails to create a factual dispute on this issue. Accordingly, she is not entitled to maintain this action as a § 301 claim, and defendants' motions appear well taken.

■ An alternative rationale recommends the same disposition. While the Ninth Circuit Court of Appeals has not, to this court's knowledge, addressed the question, some federal courts recognize an absolute privilege for statements related to grievance/arbitration procedures under a collective bargaining agreement. This privilege apparently was first articulated in *General Motors Corp. v. Mendicki,* 367 F.2d 66 (10th Cir.1966), and was more recently applied in *Hasten v. Phillips Petroleum Co.,* 640 F.2d 274 (1981). In *Hasten,* the Court of Appeals found that the privilege was not limited to "statements made during oral grievance proceedings," but extended to "the entire proceeding contemplated by the provisions of the agreement for the grievance machinery." *Id.* at 277. The *Hasten* court specifically held that this included a written discharge notice, as long as the statements therein were not published " 'to persons without a legitimate job-re-

---

1. In arguing that her state torts are not preempted, plaintiff relies on two Supreme Court decisions wherein the Court found that claims for defamation and intentional infliction of emotional distress were not preempted under federal labor laws. *Farmer v. United Brotherhood of Carpenters, Local 25,* 430 U.S. 290, 97 S.Ct. 1056, 51 L.Ed.2d 338 (1977); *Linn v. United Plant Guard Workers of America,* 383 U.S. 53, 86 S.Ct. 657, 15 L.Ed.2d 582 (1966). Defendant Hughes

persuades, however, that *Farmer* and *Linn* do not properly control. Those decisions consider preemption under the National Labor Relations Board's primary jurisdiction over unfair labor practices. They do not address federal preemption under § 301, nor do they apply the principle in the context of a suit implicating grievance/arbitration rights under a collective bargaining agreement.

lated interest in receiving [them]....' " *Id.* at 279; *quoting Joftes v. Kaufman,* 324 F.Supp. 660, 663 (D.D.C.1971); *accord, Marsh v. Pacific Motor Trucking Co.,* 89 L.R.R.M. (BNA) 2518 (C.D.Cal.1975).

As indicated above, defendants have submitted evidence that all alleged defamatory statements were made to Hughes or union representatives in connection with disciplinary or grievance proceedings. Because plaintiff has not come forward with any evidence to the contrary, the court finds those statements privileged and nonactionable as defamation torts. *Hasten v. Phillips Petroleum Co., supra,* 640 F.2d at 277, 279. This finding requires granting summary judgment in favor of the moving defendants.

### CONCLUSION

Upon due consideration of the parties' memoranda and exhibits, the arguments advanced at the hearing, and for the reasons set forth herein, the court grants defendants Hughes and ARA's motions for summary judgment.