827 F.2d 589
 126 L.R.R.M. (BNA) 2367, 107 Lab.Cas. P 10,161,
2 Indiv.Empl.Rts.Cas. 917
 Brian P. SCOTT, Plaintiff-Appellant, Cross-Appellee,
v.
MACHINISTS AUTOMOTIVE TRADES DISTRICT LODGE NO. 190 OF
NORTHERN CALIFORNIA; International Association of
Machinists and Aerospace Workers; East Bay Automotive
Machinists Lodge No. 1546; Safeway Stores, Inc., a Maryland
corporation; Raul Morales, Defendants-Appellees, Cross-Appellants.
 Nos. 86-1620, 86-1621, 86-1625, 86-1626.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Dec. 11, 1986.
Decided Sept. 8, 1987.
 
 B.V. Yturbide, San Francisco, Cal., for plaintiff-appellant, cross-appellee.
 Stewart Weinberg, San Francisco, Cal., for defendant-appellee, cross-appellant, Machinists Automotive Trades.
 Richard H. Harding, San Francisco, Cal., for defendant-appellee, cross-appellant, Safeway Stores, Inc.
 Appeal from the United States District Court for the Northern District of California.
 Before KENNEDY, TANG and THOMPSON, Circuit Judges.
 ORDER
 The opinion filed April 27, 1987, is withdrawn. The attached opinion is filed in its stead.
 OPINION
 PER CURIAM:
 
 
 1
 Scott filed suits in both state and federal court alleging five causes of action arising from termination of his employment by Safeway and related allegations of harassment by his supervisor, Morales. Three of the causes of action, although two were pleaded on theories sounding in state law for bad faith dealing and intentional interference with contractual relations, were ultimately determined to be based on section 301 of the National Labor Relations Act; the other two were state claims for defamation and emotional distress. The state case was removed to federal court, where the district court held that three section 301 causes of action had been properly removed, but remanded the defamation and emotional distress claims to state court. The district court then granted summary judgment on the section 301 claims in both the state and federal cases and dismissed the defamation and emotional distress claims in the federal case. Scott appeals the summary judgment which resulted in dismissal of his section 301 claims. Safeway and Morales appeal the remand of the claims for intentional infliction of emotional distress and defamation in the state suit. We affirm the dismissal of all five causes of action in the federal suit and the dismissal of the section 301 causes of action in the state suit; we vacate the order of remand of the emotional distress and defamation causes of action in the state suit, and dismiss these as well.
 
 BACKGROUND
 
 2
 The facts of the discharge are not in dispute. Scott was employed by Safeway as a mechanic for fourteen years before the events leading to his discharge. In September 1984, his supervisor, Morales, accused Scott, in the presence of other employees, of poor work and a poor attitude. That incident is the basis for Scott's defamation claim. Scott was fired November 15, 1984, for using profane and abusive language toward his working foreman. His union, the Machinists Automotive Trades District Lodge 190, filed a grievance under the collective bargaining agreement.
 
 
 3
 During processing of the grievance, Scott alleged that Morales had lied about the profanity incident, and that this false testimony had caused him severe emotional distress. The matter was set for arbitration in February 1985, but the day before the hearing Safeway offered to reinstate Scott and to negotiate with the union to resolve the back pay award.
 
 
 4
 At a meeting with Safeway and his union representative, Scott stated that he did not want reinstatement and would waive that and release all claims against Safeway in exchange for expungement of his employment record and $125,000. Five days later Safeway counter offered $20,000 in full settlement of all claims. Scott apparently did not reject or accept the offer, and three weeks later, in March 1985, he contacted independent counsel.
 
 
 5
 Arbitration had been rescheduled, but later the union and Safeway proceeded to settle the grievance with a settlement that included reinstatement, full back pay less the eight days of Scott's suspension, and reimbursement of out-of-pocket health and welfare costs. Scott neither approved nor rejected the settlement. Settlement checks were sent to the union representative, but Scott refused to accept them. Instead, he filed his claims in federal and state court.
 
 ANALYSIS
 
 6
 We review the district court's determination of subject matter jurisdiction de novo. Lumber Prod. Indus. Workers Local No. 1054 v. West Coast Indus. Relations Ass'n, 775 F.2d 1042, 1045 (9th Cir.1985). We review a grant of summary judgment de novo. Truex v. Garrett Freightlines, Inc., 784 F.2d 1347, 1348 (9th Cir.1985).
 
 
 7
 I. Removal Jurisdiction-Preemption of Bad Faith and Intentional Interference Claims
 
 
 8
 The district court properly held it has original jurisdiction over the claim for breach of the collective bargaining agreement and breach of the union's duty of fair representation, and that the claim was properly removed. 29 U.S.C. Sec. 185.
 
 
 9
 The district court also held the claims for breach of the implied covenant of good faith and fair dealing and intentional interference with contractual relations are preempted under the authority of Olguin v. Inspiration Consol. Copper Co., 740 F.2d 1468, 1472 (9th Cir.1984), and Fristoe v. Reynolds Metals Co., 615 F.2d 1209 (9th Cir.1980). We agree with the district court that these claims must be recharacterized as arising under federal law, and that they were properly removed to federal court. Carter v. Smith Food King, 765 F.2d 916, 921 (9th Cir.1985). The test for federal preemption of state law claims is:
 
 
 10
 [W]hen resolution of a state-law claim is substantially dependent upon analysis of the terms of an agreement made between the parties to a labor contract, that claim must either be treated as a Sec. 301 claim ... or dismissed as preempted by federal labor-contract law.
 
 
 11
 Allis-Chalmers Corp. v. Lueck, 471 U.S. 202, 220, 105 S.Ct. 1904, 1916, 85 L.Ed.2d 206 (1985) (citation omitted).
 
 
 12
 The two claims at issue here are related to the contract provisions and clearly depend upon interpretation of the contract. Interference with contract relations is obviously connected with interpretation of the contract. The tort of breach of the implied covenant of good faith and fair dealing is the tort involved in Allis-Chalmers in which the Supreme Court said that such a state cause of action is necessarily preempted by section 301. Id. at 218-19, 105 S.Ct. at 1914-15. Removal was therefore proper.
 
 
 13
 The district court remanded to state court the claims for defamation and intentional infliction of emotional distress. On its face, 28 U.S.C. Sec. 1447(d) appears to prevent us from reviewing this order of remand. That section provides that a remand order "is not reviewable on appeal or otherwise...." 28 U.S.C. Sec. 1447(d). In Thermtron Prod., Inc. v. Hermansdorfer, 423 U.S. 336, 350-52, 96 S.Ct. 584, 593, 46 L.Ed.2d 542 (1976), however, the Supreme Court held that the statute does not bar review under certain conditions. In Thermtron the district court had remanded a properly removed action solely because the district court's docket was crowded, and the action would proceed more quickly in state court. The Thermtron court held that review of the order was appropriate. The Court concluded that the restrictions of section 1447(d) apply in cases in which the remand order is based on section 1447(c), which specifies the appropriate grounds for remand. If a district court remands for reasons permitted under section 1447(c), the remand is not reviewable; but if the court remands for other reasons, the order is subject to review. Id. at 351, 96 S.Ct. at 593.
 
 
 14
 The threshold question, therefore, is whether the district court based its remand on section 1447(c). Section 1447(c) requires district courts to remand cases removed "improvidently and without jurisdiction." 28 U.S.C. Sec. 1447(c). Under this circuit's approach, therefore, we must decide whether the remand was jurisdictional. See Clorox Co. v. United States Dist. Court, 779 F.2d 517, 520 (9th Cir.1985).
 
 
 15
 The district court in the case before us decided that the claims for defamation and intentional infliction of emotional distress were not preempted and lacked an independent basis for federal jurisdiction. The district court further decided that it would not exercise its discretion to hear the actions as pendent claims. There can be no doubt that the claims were within the district court's supplemental jurisdictional power. The claims arose from the same "common nucleus of operative fact." See United Mine Workers v. Gibbs, 383 U.S. 715, 725, 86 S.Ct. 1130, 1138, 16 L.Ed.2d 218 (1966); see also Matasar, A Pendent and Ancillary Jurisdiction Primer: The Scope and Limits of Supplemental Jurisdiction, 17 U.C. Davis L.Rev. 103 (1983). Even after dismissal of the section 301 claims, the district court retained the jurisdictional power to hear the claims. Anderson v. Allstate Ins. Co., 630 F.2d 677, 681 (9th Cir.1980). It is true, as the district court noted in its remand order, that Gibbs gave it the discretion to dismiss the emotional distress and defamation claims. See Gibbs, 383 U.S. at 726, 86 S.Ct. at 1139; Anderson, 630 F.2d at 681 n. 3. However, the dismissals were not jurisdictional dismissals. Rather, they were discretionary dismissals based on a determination that the claims would be better heard in state court. Therefore, the district court did not decide that the claims were removed "improvidently and without jurisdiction," and Thermtron commands us to review the remand. We thus are not precluded from reviewing the district court's disposition of any of the claims in either the state or federal complaints. We turn now to our review of the district court's disposition of the claims before it.
 
 
 16
 II. Summary Judgment on the Section 301 Claims
 
 
 17
 The district court held that Scott could not show any breach of the union's duty of fair representation, and it granted summary judgment on all three section 301 claims. Under federal law, the only way Scott could support a claim for any damages outside the contract remedies provided by the collective bargaining agreement was by showing breach of the duty of fair representation. Vaca v. Sipes, 386 U.S. 171, 181-83, 87 S.Ct. 903, 912-13, 17 L.Ed.2d 842 (1967).
 
 
 18
 The standard for finding a breach is that the union's conduct must be "arbitrary, discriminatory, or in bad faith." Vaca, 386 U.S. at 190, 87 S.Ct. at 916; Peterson v. Kennedy, 771 F.2d 1244, 1253 (9th Cir.1985), cert. denied, --- U.S. ----, 106 S.Ct. 1642, 90 L.Ed.2d 187 (1986). In the context of a grievance, "this standard prohibits a union from ignoring a meritorious grievance or processing that grievance perfunctorily." Galindo v. Stoody Co., 793 F.2d 1502, 1513 (9th Cir.1986). We have construed the doctrine narrowly "[b]ecause unions must retain discretion to act in what they perceive to be their members' best interests." Id. at 1514. A union's representation "need not be error free." Castelli v. Douglas Aircraft Co., 752 F.2d 1480, 1482 (9th Cir.1985). "We have repeatedly held that mere negligent conduct by a union does not constitute a breach of the union's duty of fair representation." Galindo, 793 F.2d at 1514 (citing Peterson, 771 F.2d at 1253).
 
 
 19
 We have said an unintentional mistake is arbitrary only if it reflects a "reckless disregard" for the rights of the individual employee, simple negligence is not enough. Peterson, 771 F.2d at 1254. In Peterson we identified the general principles of our various decisions in these cases.
 
 
 20
 In all cases in which we found a breach of the duty of fair representation based on a union's arbitrary conduct, it is clear that the union failed to perform a procedural or ministerial act, that the act in question did not require the exercise of judgment and that there was no rational and proper basis for the union's conduct....
 
 
 21
 We have never held that a union has acted in an arbitrary manner where the challenged conduct involved the union's judgment as to how best to handle a grievance. To the contrary, we have held consistently that unions are not liable for good faith, non-discriminatory errors of judgment made in the processing of grievances.
 
 
 22
 Id. at 1254 (citations omitted).
 
 
 23
 The question in this case is whether the union's decision to process Scott's grievance and its settlement agreement with Safeway on his breach of contract claim breached the union's duty of fair representation. The union argued to the district court that it could not have done more than it did. The union settled the case for "everything Mr. Scott was entitled to, less eight days' pay, because [it] thought that was a reasonable settlement."
 
 
 24
 We conclude that in reaching its decision the union exercised judgment as to how best to process Scott's claim under the contract, and that it did not act in an arbitrary or discriminatory manner or in bad faith. It acted in a way it perceived to be in its member's best interest. The union did not breach its duty of fair representation by exercising its judgment in this manner. See Peterson, 771 F.2d at 1254.
 
 
 25
 Scott's attorney contends that the union breached its duty of fair representation by
 
 
 26
 inducing him [Scott] to think that $70,000 would be offered to him [by Safeway in settlement of his claim] the day following a day that he would return to work. He returned to work in the expectation that that would happen. And the following day an offer of at least $70,000 would be made terminating the relationship entirely. In reality, only $20,000 was offered.
 
 
 27
 Even if the union representative mistated the amount Safeway intended to offer in settlement, at most this misstatement was arguably negligent. It did not rise to the level of arbitrary conduct required to establish a breach of the union's duty of fair representation. Id. Further, there has been no showing that this misstatement prejudiced Scott's position.
 
 
 28
 Given the narrow construction of the basis upon which breach of a union's duty of fair representation may be predicated, we hold that the district court did not err in granting summary judgment in favor of the union.
 
 
 29
 III. Dismissal of the Defamation and Emotional Distress Claims
 
 
 30
 The district court erred in dismissing the defamation and intentional infliction of emotional distress claims in the federal suit without prejudice, and should have also dismissed with prejudice the emotional distress and defamation claims that it remanded to state court. The claims should have been treated as preempted by federal labor law, and the court should have granted summary judgment on those claims as well as upon the other preempted claims.
 
 
 31
 As noted earlier, state tort claims for intentional infliction of emotional distress are preempted when they arise out of the employee's discharge or the conduct of the defendants in the investigatory proceedings leading up to the discharge. Olguin, 740 F.2d at 1475-76. In this case, Scott's allegations of intentional infliction of emotional distress arise from Morales' conduct in accusing Scott of poor performance and poor attitude as well as of stealing and causing dissension. These statements were made to Scott and other employees during counseling sessions and during the meetings between the union and Safeway held prior to the settlement offer. Scott also alleged that a pattern of harassment, including pointless shift changes, an increased workload, selection of a foreman for his unit less qualified than he, and overtime work with restrictions on obtaining overtime pay, caused him emotional distress. These claims are clearly preempted because they concern working conditions and disciplinary procedures covered by the collective bargaining agreement. See Beers v. S. Pac. Transp. Co., 703 F.2d 425, 429 (9th Cir.1983).
 
 
 32
 Scott's defamation claim is also based on facts inextricably intertwined with the grievance machinery of the collective bargaining agreement. See Magnuson v. Burlington N., Inc., 576 F.2d 1367, 1369 (9th Cir.), cert. denied, 439 U.S. 930, 99 S.Ct. 318, 58 L.Ed.2d 323 (1978). In a case factually similar to the instant case, a district court held that actions based on allegedly defamatory statements made in the context of disciplinary investigations are automatically preempted by section 301. Green v. Hughes Aircraft Co., 630 F.Supp. 423, 426-27 (S.D.Cal.1985). In Green an employee was suspended from her job based on a suspicion she had stolen a sandwich but investigation led to her reinstatement and an apology from the company. Id. at 426. She filed a defamation action which was removed to federal court. Id. The district court held her claim preempted because the defamatory statements were uttered and published within the context of the incident's initial report and subsequent investigation and thus were central to the rights and procedures under the collective bargaining agreement. Id. Similarly, in this case, Scott's allegations of defamation arise from the same facts which support his section 301 action. The allegedly defamatory remarks were made in the course of a counseling session and the prearbitration meetings and investigative hearings. The defamation claim cannot be evaluated apart from the grievance procedure provided by the contract, and thus is preempted by federal labor law.
 
 
 33
 Nothing in our recent case of Tellez v. Pac. Gas and Elec. Co., 817 F.2d 536 (9th Cir.1987), is to the contrary. In Tellez the employer was alleged to have injured the employee by distributing a letter falsely accusing the employee of buying cocaine on the job. We held that neither his claims for defamation nor intentional infliction of emotional distress were preempted. We noted that the statements did not occur in the course of any mandated grievance procedure, Tellez, slip op. at 6, and that the bargaining agreement was "silent on work conditions, and vague on disciplinary formalities." Id. at 9. In sharp contrast, the statements here were made within the context of a formal grievance procedure.
 
 
 34
 We AFFIRM the dismissal of all five causes of action in the federal suit, but we REMAND the emotional distress and defamation causes of action in the federal suit for the district court to enter appropriate orders dismissing with prejudice. We VACATE the order of remand of the emotional distress and defamation causes of action in the state suit, and REMAND the defamation and emotional distress causes of action in the state suit for appropriate orders of dismissal. We AFFIRM the dismissal of the section 301 causes of action in the state suit.
 
 
 35
 TANG, Circuit Judge, concurring in part, dissenting in part:
 
 
 36
 I concur in the judgment of my colleagues in all but one respect. I do not believe the district court's remand of the state law claims is reviewable on appeal, and therefore I respectfully dissent from that portion of the majority's opinion.
 
 
 37
 The district court remanded to state court the claims for defamation and intentional infliction of emotional distress. Generally an order of remand is not reviewable by the court of appeals. 28 U.S.C. Sec. 1447(d); Gravitt v. Southwestern Bell Tel. Co., 430 U.S. 723, 97 S.Ct. 1439, 52 L.Ed.2d 1 (1977); Thermtron Prod., Inc. v. Hermansdorfer, 423 U.S. 336, 351-52, 96 S.Ct. 584, 593, 46 L.Ed.2d 542 (1976). The only exception to the non-reviewability rule is that we have held section 1447(d) bars review only of remand orders based on the statutory grounds established in section 1447(c), namely improvident removal and lack of jurisdiction. Clorox Co. v. United States Dist. Court, 779 F.2d 517, 520 (9th Cir.1985).
 
 
 38
 In Clorox we said that when "a district court's remand order is based on a resolution of the merits of some matter of substantive law 'apart from any jurisdictional decision,' section 1447(d) does not foreclose appellate review of that decision." Id. at 520 (quoting Pelleport Investors, Inc. v. Budco Quality Theatres, Inc., 741 F.2d 273, 276 (9th Cir.1984)). In this case the district court's decision was strictly a jurisdictional decision and thus we have no power to review it, even though it was an erroneous decision.
 
 
 39
 The district court explicitly announced that the tort counts were improvidently removed because they are not preempted by federal law. Although erroneous, this remand order is insulated from review because the court purports to remand on section 1447(c) grounds. Thermtron, 423 U.S. at 343-44, 96 S.Ct. at 589-90. I agree with other circuit courts that have found remand orders reviewable only when district courts expressly rely on non-section 1447(c) grounds for remand. See, e.g., In re Romulus Community Schools, 729 F.2d 431, 435 (6th Cir.1984) (remand order reviewable because the district court expressly relied on reasons for a remand other than those specified by statute); Loftin v. Rush, 767 F.2d 800, 802 (11th Cir.1985) (if district court dismisses the federal component and then implies that without it the case was removed improvidently and without jurisdiction the remand is not reviewable); Royal v. State Farm Fire & Cas. Co., 685 F.2d 124, 126 (5th Cir.1982) (Thermtron exception applies only when the district court has affirmatively stated and relied upon a non-1447(c) ground for remand).