**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

FILED

JUN 03 2011

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

CARL HAKANSON,

        Plaintiff - Appellant,

  v.

BOISE, INC and ASSOCIATION OF
WESTERN PULP & PAPER WORKERS
ASSOCIATION, LOCAL #396,

        Defendants - Appellees.

No. 10-35669

D.C. No. 6:10-cv-06094-HO

MEMORANDUM[*]

Appeal from the United States District Court
for the District of Oregon
Michael R. Hogan, District Judge, Presiding

Submitted May 2, 2011[**]
Portland, Oregon

Before: TASHIMA, BEA, and IKUTA, Circuit Judges.

    Petitioner Carl Hakanson appeals the district court's dismissal of: 1) his

Oregon state tort claims for wrongful discharge and intentional infliction of

---

    [*]    This disposition is not appropriate for publication and is not precedent
except as provided by 9th Cir. R. 36-3.

    [**]    The panel unanimously concludes this case is suitable for decision
without oral argument.  *See* Fed. R. App. P. 34(a)(2).

emotional distress (IIED) against his former employer, Boise Inc., and 2) his Oregon state tort claims for defamation and IIED against his former labor union, Western Pulp & Paper Workers Local 396 (Union). Hakanson contends the district court erred when it held all of his claims were preempted under the federal Labor Management Relations Act (LMRA), 18 U.S.C. § 6001 et. seq, and dismissed the claims as time-barred after the expiration of the LMRA's six-month statute of limitations, 29 U.S.C. § 160(b). We affirm the dismissal of the claims against Boise, and reverse and remand as to the claims against the Union.[1]

The district court correctly held that Hakanson's state law claims against Boise are preempted by the LMRA. The LMRA preempts "claims founded directly on rights created by collective-bargaining agreements, and also claims substantially dependant on an analysis of a collective bargaining agreement." *Cramer v. Consol. Freightways*, 255 F.3d 683, 689 (9th Cir. 2001). Hakanson's state law claims against Boise are dependent on an analysis of the collective bargaining agreement. Hakanson—who was terminated for fighting on company property with fellow employee Thomas Dorsey—contends his claims are not preempted because the right to act in self-defense is established public policy in the

---

[1] Because the parties are familiar with the facts of the case, we will repeat them here only to the extent necessary to explain our decision.

2

state of Oregon, thus giving him state law claims for wrongful discharge and IIED. But, Oregon has *never* recognized a wrongful discharge claim based on an employee's affirmative right to self-defense. Thus, Hakanson's wrongful discharge claim—and his IIED claim arising from his purportedly wrongful termination—requires interpretation of the collective bargaining agreement's provision which stated Boise could "discipline employees only for just and sufficient cause." Therefore, Hakanson's state law claims against Boise are preempted by the LMRA. *See Cramer*, 255 F.3d at 689. Because Hakanson filed his claims outside the LMRA's six-month statute of limitations, the district court correctly dismissed the claims against Boise.

However, the district court erred when it held Hakanson's state law claims against the Union are preempted by the LMRA. Hakanson contends the Union defamed him when it encouraged Dorsey to file a police report which stated that Hakanson had been the aggressor in their altercation. Although "statements that are made in grievance proceedings established by a [collective bargaining agreement] . . . . are privileged and may not support a state tort claim," *Hyles v. Mensing*, 849 F.2d 1213, 1217 (9th Cir. 1988), we find no authority for the proposition that the statements the Union encouraged Dorsey to make to the police were statements made "in grievance proceedings." *Hyles* provides that statements are privileged if

3

they are made by witnesses in the course of grievance *hearings*. The district court erred when it extended the *Hyles* rule to cover any and all statements made while the Union's representation of Dorsey representation was ongoing.

We cannot agree with the dissent that the Union's encouragement of Dorsey to make an allegedly false report of Hakanson's actions to the police can be a privileged act because Dorsey, the Union favorite, was engaged in grievance proceedings, and that such a report might advantageously leverage Dorsey's position in the grievance proceedings. The Union stands accused of a tort: defamation of Hakanson by encouraging Dorsey's false police report to the police. We would not extend *Hyles* to hold that civil tort becomes privileged simply because it furthers the litigation posture of the tortfeasor's favorite.

Thus, we hold that Hakanson's state-law defamation claim against the Union, and his IIED claim arising from the alleged defamation, are not preempted by the LMRA. Because Hakanson's state-law claims against the Union were not preempted by the LMRA, they also were not barred by the LMRA's statute of limitations.

We thus **AFFIRM** the dismissal of Hakanson's claims against Boise, **REVERSE** the dismissal of Hakanson's claims against the Union, and **REMAND** to the district court for further proceedings consistent with this decision.

4

Hakanson shall bear Boise's costs on appeal.  The Union shall bear half of Hakanson's costs on appeal.

*Hakanson v. Boise, Inc.*, No. 10-35669

TASHIMA, Circuit Judge, concurring in part and dissenting in part:

I concur in the majority's disposition with respect to Hakanson's claims against his former employer, Boise, Inc. I disagree, however, with both the analysis and result of the majority's disposition of Hakanson's claims against his former union, Local 396 of the Western Pulp & Paper Workers Association. I therefore respectfully dissent from that portion of the majority's disposition.

Hakanson alleged state law claims against the Union alleging that "the Union defamed him when it encouraged Dorsey to file a police report which stated that Hakanson had been the aggressor in the altercation." Citing *Hyles v. Mensing*, 849 F.2d 1213, 1217 (9th Cir. 1988), for the proposition that "statements that are made in grievance proceedings . . . are privileged and may not support a state tort claim," the majority distinguishes *Hyles* from the case at bench because it "find[s] no authority for the proposition that the statements the Union encouraged Dorsey to make to the police were statements 'made in grievance proceedings.'" Maj. Dispo. at 3.

In my view, the majority focuses on the wrong issue. The Union did not file the police report, but "encouraged" Dorsey to file one. Thus, the issue is not whether the statements made in the police report were "made in grievance proceedings," but whether the Union's "encouraging" Dorsey to file the police

report was "inextricably intertwined" with the grievance proceedings. *Lingle v Norge Div. of Magic Chef, Inc.*, 486 U.S. 399, 402 (1998). And what could be more closely intertwined with the grievance proceeding than the Union's strategizing and deciding how to defend it? Dorsey was also a member of the Union and the other party in the altercation that led to Hakanson's dismissal. The Union, believing Dorsey's case to be meritorious, agreed to take his case to arbitration after it lost (as it did in Hakanson's case) the third stage grievance. In preparing to defend Dorsey in the arbitration proceeding, the Union decided its case would be stronger if it had a police report to corroborate Dorsey's statements. Thus, "encouraging" Dorsey to file a police report was integral to its defense of Dorsey at the arbitration hearing.

As Hakanson's own allegations in his First Amended Complaint make clear, Dorsey's bringing of a civil suit against Hakanson after the conclusion of the arbitration process was "influenced by the success that [Dorsey] had in the arbitration process, which was orchestrated by" the Union. Thus, the Union's acts of encouragement and "orchestration" were "inextricably intertwined" with its duty under the collective bargaining agreement to defend meritorious cases in the contractual grievance process. *Id.* The resolution of Hakanson's defamation claim would be "substantially dependent upon analysis of the terms of" the collective

bargaining agreement. *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 220 (1985). I know of no subject which could be more closely intertwined with the contractual grievance process than the Union's decision on how to defend a grievance. The majority bases its decision on an analysis of the statements made by Dorsey in the police report, but the proper factor to analyze is *the Union's act* of encouraging Dorsey to file a police report, and the relationship of *the Union's act* to the grievance process.

In this regard, in *Scott v. Machinists Automotive Trades District Lodge No. 190*, 827 F.2d 589 (9th Cir. 1987), we examined the "allegedly defamatory remarks [that] were made in the course of a counseling session and the prearbitration meetings and investigative hearings." *Id.* at 594. We held that "[t]he defamation claim cannot be evaluated apart from the grievance procedure provided by the contract, and thus is preempted by federal labor law." *Id.* Moreover, we cited *Green v. Hughes Aircraft Co.*, 630 F. Supp. 423, 426-27 (S.D.Cal. 1985), with approval. *See Scott*, 827 F.2d at 594. *Green* held that a defamation claim was "preempted because the defamatory statements were uttered and published within the context of the incident's initial report and subsequent investigation and thus were central to the rights and procedures under the collective bargaining agreement." *Scott*, 827 F.2d at 594 (citing *Green*, 630 F. Supp. at 426-27). So too,

-3-

here, the Union's urging that a police report be filed was done "within the context of the incident's . . . subsequent investigation and thus [was] central to the rights and procedures under the collective bargaining agreement."[1]

For these reasons, I would hold that Hakanson's defamation and IIED claims against the Union are also preempted by the LMRA.

---

[1]     The majority compounds its error by characterizing my analysis of "the Union's encouragement of Dorsey" as a "privileged act."  Maj. Dispo. at 4. But whether or not the Union's act was privileged as a matter of defamation law is entirely irrelevant to my analysis, which turns, under accepted LMRA analysis, on whether the Union's act was "inextricably intertwined" with the grievance process.