TASHIMA, Circuit Judge,
concurring in part and dissenting in part:
I concur in the majority’s disposition with respect to Hakanson’s claims against his former employer, Boise, Inc. I disagree, however, with both the analysis and result of the majority’s disposition of Hakanson’s claims against his former union, Local 396 of the Western Pulp & Paper Workers Association. I therefore respectfully dissent from that portion of the majority’s disposition.
Hakanson alleged state law claims against the Union alleging that “the Union defamed him when it encouraged Dorsey to file a police report which stated that Hakanson had been the aggressor in the altercation.” Citing Hyles v. Mensing, 849 F.2d 1213, 1217 (9th Cir.1988), for the proposition that “statements that are made in grievance proceedings ... are privileged and may not support a state tort claim,” the majority distinguishes Hyles from the case at bench because it “find[s] no authority for the proposition that the statements the Union encouraged Dorsey to make to the police were statements ‘made in grievance proceedings.’ ” Maj. Dispo. at 650.
In my view, the majority focuses on the wrong issue. The Union did not file the police report, but “encouraged” Dorsey to file one. Thus, the issue is not whether the statements made in the police report were “made in grievance proceedings,” but whether the Union’s “encouraging” Dorsey to file the police report was “inextricably intertwined” with the grievance proceedings. Lingle v. Norge Div. of Magic Chef, Inc., 486 U.S. 399, 402, 108 S.Ct. 1877, 100 L.Ed.2d 410 (1988). And what could be more closely intertwined with the grievance proceeding than the Union’s strategizing and deciding how to defend it? Dorsey was also a member of the Union and the other party in the altercation that led to Hakanson’s dismissal. The Union, believing Dorsey’s case to be meritorious, agreed to take his case to arbitration after it lost (as it did in Hakanson’s case) the third stage grievance. In preparing to defend Dorsey in the arbitration proceeding, the Union decided its case would be stronger if it had a police report to corroborate Dorsey’s statements. Thus, “encouraging” Dorsey to file a police report was integral to its defense of Dorsey at' the arbitration hearing.
As Hakanson’s own allegations in his First Amended Complaint make clear, Dorsey’s bringing of a civil suit against Hakanson after the conclusion of the arbitration process was “influenced by the success that [Dorsey] had in the arbitration process, which was orchestrated by” the Union. Thus, the Union’s acts of encouragement and “orchestration” were “inextricably intertwined” with its duty under the collective bargaining agreement to defend meritorious cases in the contractual grievance process. Id. The resolution of Hakanson’s defamation claim would be “substantially dependent upon analysis of *652 the terms of’ the collective bargaining agreement. Allis-Chalmers Corp. v. Lueck, 471 U.S. 202, 220, 105 S.Ct. 1904, 85 L.Ed.2d 206 (1985). I know of no subject which could be more closely intertwined with the contractual grievance process than the Union’s decision on how to defend a grievance. The majority bases its decision on an analysis of the statements made by Dorsey in the police report, but the proper factor to analyze is the Union’s act of encouraging Dorsey to file a police report, and the relationship of the Union’s act to the grievance process.
In this regard, in Scott v. Machinists Automotive Trades District Lodge No. 190, 827 F.2d 589 (9th Cir.1987), we examined the “allegedly defamatory remarks [that] were made in the course of a counseling session and the prearbitration meetings and investigative hearings.” Id. at 594. We held that “[t]he defamation claim cannot be evaluated apart from the grievance procedure provided by the contract, and thus is preempted by federal labor law.” Id. Moreover, we cited Green v. Hughes Aircraft Co., 630 F.Supp. 423, 426-27 (S.D.Cal.1985), with approval. See Scott, 827 F.2d at 594. Green held that a defamation claim was “preempted because the defamatory statements were uttered and published within the context of the incident’s initial report and subsequent investigation and thus were central to the rights and procedures under the collective bargaining agreement.” Scott, 827 F.2d at 594 (citing Green, 630 F.Supp. at 426-27). So too, here, the Union’s urging that a police report be filed was done “within the context of the incident’s ... subsequent investigation and thus [was] central to the
rights and procedures under the collective bargaining agreement.”[1]
For these reasons, I would hold that Hakanson’s defamation and IIED claims against the Union are also preempted by the LMRA.

. The majority compounds its error by characterizing my analysis of “the Union’s encouragement of Dorsey” as a "privileged act.” Maj. Dispo. at 650. But whether or not the Union's act was privileged as a matter of defamation law is entirely irrelevant to my analysis, which turns, under accepted LMRA analysis, on whether the Union's act was "inextricably intertwined” with the grievance process.