Peggy **CHILDERS**, Plaintiff,

v.

**CHESAPEAKE AND POTOMAC TELEPHONE COMPANY et al.,** Defendants.

Civ. A. No. Y–87–236.

United States District Court, D. Maryland.

Sept. 30, 1987.

William Ober and Daniel Cohen, Baltimore, Md., for plaintiff.

Leonard E. Cohen and Mary E. Pivec, Baltimore, Md., for defendants.

MEMORANDUM

JOSEPH H. YOUNG, District Judge.

Plaintiff, Peggy Childers, filed suit against the Chesapeake and Potomac Telephone Company (C & P)[1] and its employees

---

1. Childers erroneously sued C & P, a New York corporation, when she meant to sue her former

David Charles Seal, Ray N. Brown, M.D., and Robert E. Gerring in the Circuit Court for Baltimore City, Maryland, alleging wrongful discharge, retaliatory discharge, and intentional infliction of emotional distress, arising out of Childers' employment with C & P. Claiming that Childers' allegations constituted a cause of action for breach of a collective bargaining agreement pursuant to Section 301 of the Labor Management Relations Act (LMRA), 29 U.S.C. § 185(a)[2], defendants petitioned for removal to this Court under 28 U.S.C. § 1331(a)[3] and 28 U.S.C. § 1441(b).[4]

Currently, Childers moves to remand this case to state court, contending that her complaint is based strictly on Maryland law and thus ineligible for removal. Assuming that Childers' claims are properly pre-empted by LMRA § 301 and removed to federal court, defendants move for summary judgment claiming that Childers has not fulfilled the formal prerequisites for a § 301 action.

*Background*

Childers began working with C & P of Maryland[5] in 1973 as a telephone installer. She was a member of the Communications Workers of America (CWA) and the collective bargaining unit which the CWA represented at C & P of Maryland. The terms and conditions of Childers' employment with C & P of Maryland were controlled by a collective bargaining agreement between the CWA, AFL–CIO, and C & P of Mary-

land. *See* Defendants' Memorandum in Support of Summary Judgment, Exh. 1. This agreement contained a grievance and arbitration procedure for handling employment disputes. *Id.,* Arts. 12–13.

On September 3, 1981, Childers severely injured her finger while installing a telephone. The Maryland Worker's Compensation Commission (the "Commission") subsequently awarded her temporary total disability from the time of the injury to October 8, 1981. Because of Childers' disability, C & P of Maryland removed her from phone installation and promoted her to central office technician on October 10, 1982.

Childers was unhappy with her office position. In June 1983, she filed a claim for permanent partial disability benefits for her hand injury with the Commission. She also consulted a psychiatrist to treat her depression which she alleged resulted from her hand injury and her employer's reaction to her injury. On July 11, 1983, Childers wrote her employer that the conditions of her employment with C & P of Maryland were intolerable; accordingly, she began a leave of absence from work which would last until she was fired on January 4, 1984.

Defendant Brown, Medical Director for C & P of Maryland, approved a medical disability leave for Childers pending a determination by a company-appointed psychiatrist regarding Childers' ability to work. On November 30, 1983, the company's psychiatrist concluded that Childers had no

---

employer, the Chesapeake and Potomac Telephone Company of Maryland (C & P of Maryland). Although Childers acknowledged this oversight at her February 23, 1987 deposition and C & P subsequently reminded her of this problem in its memorandum supporting its motion for summary judgment, Childers has yet to dismiss her claims against C & P and substitute C & P of MD as a defendant.

**2.** LMRA § 301 provides in pertinent part:
   Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce …, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

29 U.S.C. § 185(a).

**3.** 28 U.S.C. § 1331(a) provides:
   The district courts shall have original jurisdiction of all civil actions wherein the matter in controversy exceeds the sum or value of $10,-000, exclusive of interest and costs, and *arises under the Constitution, laws, or treaties of the United States.*
   (emphasis added).

**4.** 28 U.S.C. § 1441(b) provides in pertinent part:
   Any civil action of which the district courts have original jurisdiction founded on a claim or right arising under the Constitution, treaties or laws of the United States shall be removable without regard to the citizenship or residence of the parties.

**5.** *See supra* note 1.

psychiatric disability related to her hand injury and that her decision to stop work was voluntary. Accordingly, Brown decided that Childers was able to return to work on December 8, 1983, and that she would not receive disability benefits after that date. Childers' supervisor informed her of the company's decision.

Childers refused to return to work. On December 22, 1983, defendant Gerring, District Manager of Switching Services for C & P of Maryland, sent Childers a mailgram notifying her that if she failed to return to work by January 3, 1984, she would be removed from the company's payroll. C & P of Maryland terminated Childers' employment on January 4, 1984, when she refused to return to work as ordered.

Childers alleged that she did not realize that she was fired until her supervisor wrote her on January 23, 1984, demanding her company identification card and keys. When she requested the CWA to file a grievance on her behalf on February 10, 1984, the union informed her that it could not pursue her grievance because it was late. Childers had failed to have her grievance filed within thirty days of her termination as required by article 12 of the collective bargaining agreement. When Childers appealed to the National Labor Relations Board (NLRB), the NLRB informed her that it would not interfere with the collective bargaining agreement.

Since Childers was fired, she has been in frequent need of psychiatric care. She has also maintained several disputes with defendant Seal, the Worker's Compensation Claims Manager for C & P of Maryland, and the Commission regarding disability compensation benefits.

### Motion to Remand

■ Defendants removed this case to this Court, claiming that Childers' state law claims were pre-empted by LMRA § 301 and thereby worthy of removal pursuant to 28 U.S.C. § 1331(a) and 28 U.S.C. § 1441(b). Childers argues that the case should be remanded because her claims are based strictly on Maryland law. The United States Supreme Court recently considered a similar issue, namely whether a state law complaint for breach of individual employment contracts was pre-empted by LMRA § 301 and thereby removable to federal district court. *Caterpillar, Inc. v. Williams,* — U.S. —, 107 S.Ct. 2425, 96 L.Ed.2d 318 (1987).

In *Caterpillar,* the Supreme Court summarized the law regarding removal.

Only state court actions that originally could have been filed in federal court may be removed to federal court by the defendant. Absent diversity of citizenship, federal question jurisdiction is required. The presence or absence of federal question jurisdiction is governed by the 'well-pleaded complaint rule,' which provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint. The rule makes the plaintiff the master of the claim; he or she may avoid federal jurisdiction by exclusive reliance on state law.... Thus, it is now settled law that a case may not be removed to federal court on the basis of a federal defense, including the defense of pre-emption, even if the defense is anticipated in the plaintiff's complaint, and even if both parties concede that the federal defense is the only question truly at issue.

*Caterpillar,* 107 S.Ct. at 2429–30 (citations omitted). Childers argues on the strength of the "well-pleaded complaint rule" that since she pleaded exclusively state law claims, defendants cannot remove this case based on the federal defense of pre-emption under LMRA § 301.

However, the Supreme Court in *Caterpillar* identified a powerful exception to the "well-pleaded complaint rule" which covers removal of claims which are pre-empted by LMRA § 301.

There does exist, however, an 'independent corollary' to the well-pleaded complaint rule known as the 'complete pre-emption' doctrine. On occasion, the Court has concluded that the pre-emptive force of a statute is so 'extraordinary' that it 'converts an ordinary state common-law complaint into one stating a fed-

eral claim for purposes of the well-pleaded complaint rule.' Once an area of state law has been completely pre-empted, any claim purportedly based on the pre-empted state law is considered, from its inception, a federal claim, and therefore arises under federal law.... The complete pre-emption corollary to the well-pleaded complaint rule is applied primarily in cases raising claims pre-empted by § 301 of the LMRA.

*Caterpillar,* 107 S.Ct. at 2430 (citations omitted). In *Caterpillar,* the Supreme Court denied removal of the employee's state law claims to federal court because they involved an individual employment contract between the parties and not a collective bargaining agreement and thus were not pre-empted pursuant to § 301 of the LMRA. *Id.* at 2431. Thus, this Court must examine the purpose of LMRA § 301 and determine whether it pre-empts Childers' state law claims to resolve whether removal is appropriate.

The Supreme Court first analyzed the pre-emptive effect of LMRA § 301 in *Teamsters v. Lucas Flour Co.,* 369 U.S. 95, 103–04, 82 S.Ct. 571, 576–77, 7 L.Ed.2d 593 (1962), and concluded that "in enacting § 301 Congress intended doctrines of federal labor law uniformly to prevail over inconsistent local rules." Accordingly, the Court held that § 301 pre-empted the state law suit claiming a violation of a collective bargaining contract and thereby required that it be resolved pursuant to federal law. *Id.* at 104–06, 82 S.Ct. at 577–78.

In *Allis-Chalmers Corp. v. Lueck,* 471 U.S. 202, 105 S.Ct. 1904, 85 L.Ed.2d 206 (1985), the Supreme Court extended its *Lu-cas Flour* ruling concerning the pre-emptive nature of § 301.

If the policies that animate § 301 are to be given their proper range, however, the pre-emptive effect of § 301 must extend beyond suits alleging contract violations.... The interests in interpretive uniformity and predictability that require that labor-contract disputes be resolved by reference to federal law also require that the meaning given a contract phrase or term be subject to uniform federal interpretation. Thus, questions relating to what the parties to a labor agreement agreed, and what legal consequences were intended to flow from breaches of that agreement, must be resolved by reference to uniform federal law, whether such questions arise in the context of a suit for breach of contract or in a suit alleging liability in tort. Any other result would elevate form over substance and allow parties to evade the requirements of § 301 by relabeling their contract claims as claims for tortious breach of contract.

*Allis-Chalmers,* 471 U.S. at 210–11, 105 S.Ct. at 1911. The Supreme Court asked whether the state tort claim for bad-faith handling of an insurance claim was "inextricably intertwined with consideration of the terms of the labor contract." *Id.* at 213, 105 S.Ct. at 1912. Finding such a relationship to exist, the Supreme Court held that the state tort claim was pre-empted by LMRA § 301.[6] *Id.* Recently, the Supreme Court applied its *Allis-Chalmers* analysis to hold that a state law tort claim for breach of duty of care was pre-empted by § 301 because it was "inextricably inter-twined" with the collective bargaining

---

**6.** The Supreme Court concluded *Allis-Chalmers* by noting:

A final reason for holding that Congress intended § 301 to pre-empt this kind of derivative tort claim is that only that result preserves the central role of arbitration in our 'system of industrial self-government.' ... Since nearly any alleged willful breach of contract can be restated as a tort claim for breach of good-faith obligation under a contract, the arbitrator's role in every case would be bypassed easily if § 301 is not understood to pre-empt such claims. Claims involving vacation or overtime pay, work assignment, unfair discharge—in short, the whole range of disputes traditionally resolved through arbitration—could be brought in the first instance in state court by complaint in tort rather than in contract. A rule that permitted an individual to sidestep available grievance procedures would cause arbitration to lose most of its effectiveness, as well as eviscerate a central tenet of federal labor-contract law under § 301 that it is the arbitrator, not the court, who has responsibility to interpret the labor contract in the first instance.

*Id.* at 219–20, 105 S.Ct. at 1915 (citation omitted).

agreement between the parties in that the labor agreement contained provisions regarding the employer's duty of care. *IBEW v. Hechler*, — U.S. —, 107 S.Ct. 2161, 2168, 95 L.Ed.2d 791 (1987). However, as the Supreme Court warned in *Allis-Chalmers*, 471 U.S. at 211, 105 S.Ct. at 1911, "not every dispute concerning employment, or tangentially involving a provision of a collective-bargaining agreement, is pre-empted by § 301." Therefore, this Court must scrutinize each of Childers' state tort law claims to determine whether they are "inextricably intertwined" with the CWA collective bargaining agreement and thus merit pre-emption by LMRA § 301.

Childers has charged defendants with wrongful discharge, retaliatory discharge, and intentional infliction of emotional distress pursuant to Maryland statutory and common law.[7] Articles 12 and 13 of the CWA collective bargaining agreement set forth the grievance and arbitration rules which apply to Childers as a union member. Specifically, article 12, section 1(f) provides:

> It is agreed that ... neither the Company, its representatives, nor the Union, the Locals, their representatives or members, will attempt by means other than the grievance procedure to bring about the settlement of any issue which is properly a subject for disposition through the grievance or arbitration procedures.

Article 13, section 1(b) lists as a proper subject for the grievance or arbitration procedures "[t]he dismissal (for just cause) of an employee." Finally, article 12, section 1(c) provides a thirty calendar day time limit for the filing of claims after the disputed event.

It is clear from the provisions of the CWA collective bargaining agreement that Childers' wrongful discharge claim is "inextricably intertwined" with this labor agreement and thus is pre-empted by LMRA § 301. *Allis-Chalmers*, 471 U.S. at 219–20, 105 S.Ct. at 1915 ("[T]he arbitrator's role in every case could be bypassed easily if § 301 is not understood to pre-empt such claims .... involving vacation or overtime pay, work assignment, unfair discharge—in short, the whole range of disputes traditionally resolved through arbitration."); *Stallcop v. Kaiser Foundation Hospitals*, 820 F.2d 1044, 1048 (9th Cir. 1987). Similarly, Childers' retaliatory discharge claim merits pre-emption under LMRA § 301 because it is "inextricably intertwined" to the CWA collective bargaining agreement. *Lingle v. Norge Division of Magic Chef, Inc.*, 823 F.2d 1031, 1046 (7th Cir.1987) (en banc); *Johnson v. Hussmann Corp.*, 805 F.2d 795, 797 (8th Cir.1986).

■ While Childers' claims for wrongful and retaliatory discharge are tied to the collective bargaining agreement's provision regarding dismissal for just cause, her claim for intentional infliction of emotional distress does not have an analogous provision in the agreement. However, this claim results from her alleged unfair and retaliatory discharge and thus constitutes "grist for the mill of grievance procedures and arbitration." *Strachan v. Union Oil Co.*, 768 F.2d 703, 705 (5th Cir.1985); cf. *Kirby v. Allegheny Beverage Corp.*, 811 F.2d 253, 256 (4th Cir.1987) (a worker's invasion of privacy claim against his employer is governed by the collective bargaining agreement and thus pre-empted). Since Childers' intentional infliction of emo-

---

**7.** Childers bases her wrongful discharge claim on *Adler v. American Standard Corp.*, 291 Md. 31, 47, 432 A.2d 464 (1981), which provides: "Maryland does recognize a cause of action for abusive [wrongful] discharge by an employer of an at will employee when the motivation for the discharge contravenes some clear mandate of public policy." She grounds her retaliatory discharge claim on Md.Ann.Code art. 101 § 39A (1985), which states in pertinent part: "An employee entitled to benefits under this article may not be discharged from employment solely be-

cause he files a claim for compensation under this article." Finally, Childers' supports her intentional infliction of emotional distress tort claim with *Harris v. Jones*, 281 Md. 560, 566, 380 A.2d 611 (1977), which provides the following elements for this tort: "(1) The conduct must be intentional or reckless; (2) The conduct must be extreme and outrageous; (3) There must be a causal connection between the wrongful conduct and the emotional distress; (4) The emotional distress must be severe."

629

tional distress claim should be raised in the course of her discharge grievance arbitration, it is pre-empted under LMRA § 301. *Morris v. Owens-Illinois, Inc.*, 729 F.2d 1453, No. 82–1788, slip op. at 5–8 (4th Cir. Feb. 22, 1984) [Table] ("Put simply, an aggrieved employee in this [discharge] situation cannot sidestep a federally mandated grievance process merely by pleading emotional injury."); *Stallcop*, 820 F.2d at 1049.

Thus, Childers' claims for wrongful discharge, retaliatory discharge, and intentional infliction of emotional distress are pre-empted by § 301 of the LMRA. Since defendants have properly removed this case pursuant to 28 U.S.C. § 1331(a) and 28 U.S.C. § 1441(b), Childers' motion to remand is denied.

### *Motion for Summary Judgment*

■ Defendants move for summary judgment pursuant to Fed.R.Civ.P. 56 claiming that Childers has not satisfied the prerequisites of a § 301 claim. One such requirement is that the plaintiff "must attempt to exhaust any exclusive grievance and arbitration procedures established by that [collective bargaining] agreement before he may maintain a suit against his union or employer under § 301(a) of the Labor Management Relations Act." *Clayton v. International Union, UAW*, 451 U.S. 679, 681, 101 S.Ct. 2088, 2091, 68 L.Ed.2d 538 (1981). *See also Republic Steel Corp. v. Maddox*, 379 U.S. 650, 652, 85 S.Ct. 614, 616, 13 L.Ed.2d 580 (1965); *Morris v. Owens-Illinois, Inc.*, No. 82–1788, slip op. at 5 (4th Cir. Feb. 22, 1984) [Table] ("Federal labor policy requires that an employee covered by a collective bargaining agreement exhaust any contractual remedies, such as grievance and arbitration, before bringing suit for violation of the collective bargaining agreement."). Childers filed a grievance with C & P of Maryland which the company refused to hear because the grievance was filed after the thirty-day deadline. Although she tried unsuccessfully to get the NLRB to intervene, Childers chose not to appeal to her company and union. Thus, Childers did not exhaust her contractual remedies in that she filed an untimely grievance and then chose not to appeal when the grievance was rejected.

Childers' tardiness caused her to fail to fulfill another prerequisite for a § 301 claim. Actions pursuant to § 301 are subject to the six month statute of limitations of National Labor Relations Act § 10(b). *DelCostello v. Teamsters*, 462 U.S. 151, 169, 103 S.Ct. 2281, 2293, 76 L.Ed.2d 476 (1983); *Zemonick v. Consolidation Coal Co.*, 762 F.2d 381, 382 (4th Cir.1985), *aff'd on rehearing*, 796 F.2d 1546 (1986) (*en banc*). Childers learned that her union could not pursue her belated grievance on February 10, 1984, but she did not file her suit until January 5, 1987, almost three years later. Accordingly, Childers' action is barred by the six month statute of limitations.

Since Childers failed to exhaust her grievance and arbitration remedies before bringing her claim and failed to file this claim within six months after she learned that the union would not pursue her late grievance, defendants' motion for summary judgment is granted.

### *Conclusion*

Childers' state court action against the defendants for wrongful discharge, retaliatory discharge, and intentional infliction of emotional distress is pre-empted by § 301 of the LMRA and properly removed pursuant to 28 U.S.C. § 1331(a) and 28 U.S.C. § 1441(b). Defendants' motion for summary judgment is granted because Childers has not satisfied the prerequisites for a § 301 action.