Carl A. FURILLO, Jr., Plaintiff,

v.

DANA CORPORATION PARISH DIVISION, Lou Benien, Kip R. Brown and Stuart F. Hammel, Defendants.

Civ. A. No. 94–CV–3988.

United States District Court,
E.D. Pennsylvania.

Oct. 21, 1994.

Leon Ehrlich, Ehrlich & Ehrlich, Reading, PA, for plaintiff.

Alan S. Grodnitzky, Scott F. Cooper, Blank, Rome, Comisky and McCauley, Philadelphia, PA, for defendants.

### OPINION AND ORDER

VAN ANTWERPEN, District Judge.

On June 6, 1994, plaintiff, Carl A. Furillo, Jr., filed a complaint with the Court of Com-

mon Pleas in Berks County, Pennsylvania, and alleged a state law claim for defamation against defendants Dana Corporation Parish Division ("Dana"), Lou Benien, Dana's Human Resource Manager, Kip R. Brown, Dana's Industrial Relations Manager, and Stuart F. Hammel, Dana's Manager of Safety and Workers' Compensation.[1] On June 28, 1994, defendants removed this action to our court pursuant to 28 U.S.C. § 1441(b). Defendants subsequently filed, on July 29, 1994, a Motion to Dismiss or in the Alternative for Summary Judgment on the ground that plaintiff's state law defamation claim is preempted under Section 301(a) of the Labor Management Relations Act of 1947, 29 U.S.C. § 185 *et seq.* Plaintiff, on August 12, 1994, filed a Response to defendant's Motion and also filed a Cross Motion to Remand to state court for lack of subject matter jurisdiction. On August 29, 1994, defendants filed a Response in Opposition to Plaintiff's Cross Motion to Remand as well as a Reply to Plaintiff's Response to Defendants' Motion to Dismiss. This matter is presently before the court on both of these motions, and they will be dealt with together since the principal issue in deciding both is whether plaintiff's state law defamation action is preempted under § 301. This court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1441(b).

## I. FACTUAL BACKGROUND

The undisputed facts in this case are as follows. Plaintiff, Carl A. Furillo, Jr. worked for Dana and was a member of the United Steel Workers of America, Local 3733 ("Union"), which had a collective bargaining agreement ("CBA") with Dana. The terms and conditions of Furillo's employment were governed by this CBA.

On August 25, 1993, plaintiff called in sick to work due to an alleged headache.[2] Prior to this date, Dana management had noticed a pattern in the plaintiff's absences from work due to sickness. The absences usually occurred on either a Wednesday or Friday. They suspected that plaintiff was not sick and was instead working on those days at his family-owned video store. The company had decided, prior to August 25, that the next time plaintiff called in sick, a private investigator would be called in to determine his whereabouts. A private investigator was thus dispatched after plaintiff called in sick on the morning of August 25. He followed plaintiff for much of the morning as plaintiff apparently ran errands, but lost sight of him for several hours midday. The investigator next located plaintiff later that afternoon at his family's video store.

When plaintiff reported to work the next day, he brought with him a doctor's slip, apparently issued by his chiropractor, indicating that he had been too sick to work the previous day due to a headache.[3] The doctor's slip was a photocopy and not an original. When the company examined plaintiff's medical records, they found a doctor's slip dated June 25, 1993, that appeared identical to the slip plaintiff had just handed in. The placement of the words and marks on the slip was the same and only the date was different. *See* Exhibits C and D, Defendants' Motion to Dismiss or in the Alternative for Summary Judgment.

Based on their suspicions regarding the possible forgery of the doctor's slip, as well as true reasons for plaintiff's absence, Dana management called a meeting with plaintiff and his Union representatives on August 27, 1993.[4] Present at the meeting were Dana

1. This action is based on alleged defamatory statements made and published by the individual defendants to third persons imputing criminal conduct to plaintiff. *See* Plaintiff's Motion to Remand at 1.

2. Plaintiff was being treated by a chiropractor for pain to his cervical area and chest and for headaches arising out of a work-related injury. *See* Exhibit B (Award of Arbitration), Defendants' Motion to Dismiss at 2 (hereinafter Exhibit B).

3. In order to receive reimbursement for loss of pay, plaintiff was required by company policy to submit a doctor's note. *See* Exhibit B at 2.

4. This meeting was called pursuant to Article 10, Adjustment of Grievances, of the CBA. Article 10 sets forth an agreed upon three-step dispute resolution process.

   Step One of the grievance procedure allows the employee, through written notice, to meet with his supervisor, the Area Manager, the Department Committeeperson, a representative from the Industrial Relations Staff, the General

representatives Benien, Brown and Hammel, and Union representatives Richard Trabosh and Robert Crupi, in addition to the plaintiff. Prior to the meeting, the company officials had met privately to discuss which of two disciplinary measures in the CBA would be applicable to plaintiff if it was found that his conduct had violated the CBA. The CBA sets forth "Shop Rules" which governed the discipline of an employee who has violated those rules. If, however, the employee's misconduct is not governed by a Shop Rule, the company still had the right, under "Management Rights" to suspend and discharge an employee. Under the Shop Rules, the penalty for a first time violation is a written warning. Under Management Rights, the penalty for a first time violation is suspension for five days. *See* Exhibit A, Defendants' Motion to Dismiss or in the Alternative for Summary Judgment.

At the beginning of the meeting, the company representatives announced their belief that Management Rights should govern any discipline of the plaintiff, as opposed to the Shop Rules.[5] During the meeting, the suspicions of the company that plaintiff had forged a doctor's note and had not actually been ill on August 25, were discussed by those present. Plaintiff does not allege that there was anyone present at the meeting who should not have been present.

At the end of the meeting, Dana found plaintiff in violation of the CBA. There is some confusion as to whether the plaintiff was then suspended or discharged. For a first time violation of the CBA under Management Rights, the penalty is apparently suspension. However, plaintiff believed that as a result of this meeting, he had been discharged. The basis for his belief is the fact that at the end of the meeting he was handed a slip of paper which said "Notice of Violation of Shop Rules" and listed four different types of action: (1) written warning, (2) second written warning, (3) third written warning, and (4) discharge. The space next to "discharge" had been marked with an "X."

The Union filed a grievance on plaintiff's behalf, asserting that he had been wrongly discharged in violation of the CBA, and requested plaintiff's immediate reinstatement with back pay.[6] *See* Exhibit F, Defendants' Motion to Dismiss or in the Alternative for Summary Judgment. On September 16, a Step Two grievance meeting was held in accordance with the CBA. The Dana representatives maintained at this meeting that from August 27 to September 16, plaintiff had been suspended, not terminated. However, they then converted his suspension into a termination. The matter then proceeded to arbitration.[7] The question presented to the arbitrator, by both parties, was "Was the grievant discharged for just cause and, if not, what is the proper remedy?" *See* Exhibit B.

---

Grievance Committeeperson in charge of the Department and shift to which the grievance applies, and any other Union representatives.

If the employee is not satisfied with this stage of the process, he may, with the filing of a written grievance, proceed to Step Two. Step Two is a meeting between a representative of the International Union, the Chair of the Grievance Committee, the General Grievance Committeeperson in charge of the Department and shift to which the grievance applies, and others who joined in Step One.

If the grievance is still not resolved at this stage, Step Three of the procedure mandates binding arbitration conducted under the Code of Federal Regulations relating to the Federal Mediation and Conciliation Service's arbitration policies and procedures. The Award of the arbitrator is final and binding on both Union and Employer.

**5.** Defendants allege that a determination was made before the meeting that no Shop Rule existed for reporting off from work at Dana to work elsewhere. However, they also allege that management determined that a Shop Rule did exist for falsifying pay data or other records. *See* Defendants' Motion to Dismiss or in the Alternative for Summary Judgment at 6.

**6.** It was the Union's position that, in the first instance, plaintiff had done nothing to violate the CBA since there were no regulations regarding outside employment. However, if he was found in violation of the CBA, the Union further maintained that the Shop Rules, not Management Rights, should apply. *See* Exhibit G, Defendants' Motion to Dismiss or in the Alternative for Summary Judgment.

**7.** Under Article 10 of the CBA, arbitration is the third and final step in the grievance process. The decision of the arbitrator is final and binding on all parties.

On July 20, 1994, the arbitrator issued his Award of grievances. He held that the procedural requirements of the CBA had been adequately adhered to by Dana; that plaintiff had been suspended, not discharged at the August 27 meeting; but that there was not enough evidence to indicate that the plaintiff had been wrongly working somewhere else on August 25.[8] Consequently, plaintiff was reinstated to his former position without back pay and benefits.

## II. *STANDARD OF REVIEW*

As an initial matter, we note that we will treat defendants' Motion as one for Summary Judgment since they have submitted material, which we have taken into account, that falls outside the scope of the pleadings. *See* Fed.R.Civ.Pro. 12(b).

Rule 56(c) of the Federal Rules of Civil Procedure provides for summary judgment where the:

> pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.

"The party moving for summary judgment must demonstrate that, under the undisputed facts, the non-movant has failed to introduce evidence supporting a necessary element of his case." *In Re Phillips Petroleum Sec. Litig.*, 881 F.2d 1236, 1243 (3d Cir.1989). To defeat summary judgment, the non-moving party must respond with facts of record that contradict the facts identified by the movant and may not rest on mere denials. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 321 n. 3, 106 S.Ct. 2548, 2552 n. 3, 91 L.Ed.2d 265 (1986) (quoting Fed.R.Civ.P. 56(e)); *see also First Nat'l Bank v. Lincoln Nat'l Life Ins. Co.*, 824 F.2d 277, 282 (3d Cir.1987). The non-moving party must demonstrate the existence of evidence that would support a jury finding in its favor. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49, 106 S.Ct. 2505, 2510–11, 91 L.Ed.2d 202 (1986). As we have noted, we have set forth facts which are not disputed.

## III. *MOTION TO REMAND*

Section 301(a) of the Labor Management Relations Act provides:

> Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

29 U.S.C. § 185(a). In addition to providing federal jurisdiction over controversies involving Collective Bargaining Agreements ("CBA"), § 301 of the Labor Management Relations Act ("§ 301") also "authorizes federal courts to fashion a body of federal law for the enforcement of these collective-bargaining agreements." *Textile Workers v. Lincoln Mills*, 353 U.S. 448, 451, 77 S.Ct. 912, 915, 1 L.Ed.2d 972 (1957). The Supreme Court has made clear that "the dimensions of § 301 require the conclusion that substantive principles of federal labor law must be paramount in the area covered by the statute [so that] issues raised in suits of a kind covered by § 301 [are] to be decided according to the precepts of federal labor policy." *Allis–Chalmers v. Lueck*, 471 U.S. 202, 105 S.Ct. 1904, 85 L.Ed.2d 206 (1985) (quoting *Teamsters v. Lucas Flour Co.*, 369 U.S. 95, 103, 82 S.Ct. 571, 576, 7 L.Ed.2d 593 (1962)). The doctrine is motivated by concern for uniformity in the law applied to labor contracts. *See Id.* at 211, 105 S.Ct. at 1911.

The Supreme Court has held that when "evaluation of a [state law] claim is inextricably intertwined with consideration of the terms of a labor contract," the state law claim is preempted by § 301. *Id.* This is because

---

**8.** The arbitrator also noted that he found that the note submitted by plaintiff on August 26 was identical to a previous note submitted by plaintiff. However, when plaintiff's doctor's files were subpoenaed, there was a note in plaintiff's file confirming that an Authorization for Absence note had been made out for plaintiff on August 25.

[t]he interests in interpreting uniformity and predictability that require that labor-contract disputes be resolved by reference to federal law also require that the meaning given a contract phrase or term be subject to uniform federal interpretation. Thus, questions relating to what the parties to a labor agreement agreed, and what legal consequences were intended to flow from breaches of that agreement must be resolved by reference to uniform federal law.... [A]ny other result would elevate form over substance and allow the parties to evade the requirements of § 301.

*Id. See also Electrical Workers v. Hechler*, 481 U.S. 851, 858–59 n. 3, 107 S.Ct. 2161, 2166 n. 3, 95 L.Ed.2d 791 (1987) (holding that § 301 preemption occurs when the plaintiff's claims are "substantially dependent on analysis of a collective bargaining agreement").

The Supreme Court clarified this holding in *Lingle v. Norge Div. of Magic Chef, Inc.*, 486 U.S. 399, 108 S.Ct. 1877, 100 L.Ed.2d 410 (1988), by ruling that if the presence of the necessary elements of a state claim can be ascertained without recourse to interpretation of the CBA, the state law remedy is not preempted. *See id.* at 413, 108 S.Ct. at 1885. The fact that the claim requires "addressing precisely the same set of facts," however, is not enough to implicate § 301 preemption. *Id.* at 410, 108 S.Ct. at 1883.

In order to determine if § 301 preempts a plaintiff's state law tort claims, then, *Lingle* instructs us to first determine whether resolution of plaintiff's claim requires an interpretation of the CBA. *See Crawford v. TRW, Inc.*, 815 F.Supp. 1028, 1033 (E.D.Mich.1993); *Barbe v. Great Atlantic & Pacific Tea Co, Inc.*, 722 F.Supp. 1257, 1260 (D.Md.1989), *aff'd*, 940 F.2d 651 (4th Cir. 1991), *cert. denied* —— U.S. ——, 112 S.Ct. 939, 117 L.Ed.2d 109 (1992), in which the court explained the preemption analysis required by *Allis–Chalmers* and *Lingle:*

Under a proper preemption analysis ... the first step is to recognize the essential elements of the state law tort claims, in this case defamation and intentional infliction of emotional distress, and against the elements so identified, determine whether the state law claim can be resolved without interpreting or depending on the proper interpretation of the collective bargaining agreement.

*Id.*

■■■ In the case *sub judice*, in order to determine whether the plaintiff's defamation claim requires interpretation of the CBA, the elements the plaintiff must prove to make out a defamation claim must first be examined. In Pennsylvania, to make out a *prima facie* claim for defamation, a plaintiff must establish each of the following elements:

(1) The defamatory character of the communication.

(2) Its publication by the defendant.

(3) Its application to the plaintiff.

(4) The understanding by the recipient of its defamatory meaning.

(5) The understanding by the recipient of it as intended to be applied to the plaintiff.

(6) Special harm resulting to the plaintiff from its publication.

(7) Abuse of a conditionally privileged occasion.

The defendant has the burden of proving, when relevant to the defense:

(1) The truth of the defamatory communication.

(2) The privileged character of the occasion on which it was published.

(3) The character of the subject matter of defamatory comment as of public concern.

*See* 42 Pa.Cons.Stat.Ann. § 8343 (1994); *Elia v. Erie Ins. Exchange*, 430 Pa.Super. 384, 634 A.2d 657, 659 (1993). Under Pennsylvania defamation law, it is within the trial court's province to make an initial determination whether or not the challenged statements are capable of having a defamatory meaning. *Elia*, 634 A.2d at 660; *Cashdollar v. Mercy Hosp. of Pittsburgh*, 406 Pa.Super. 606, 595 A.2d 70, 75 (1991).

■■■ In addition, liability for publication of a defamatory matter may be defeated by a privilege to publish it. *Agriss v. Roadway Express, Inc.*, 334 Pa.Super. 295, 483 A.2d 456 (1984). An employer has an absolute privilege to publish defamatory matters in notices of employee termination, *DeLuca v. Reader*, 227 Pa.Super. 392, 323 A.2d 309

(1974), and such publication communicated to plaintiff and relevant supervisory personnel is not capable of defamatory meaning. *Sobel v. Wingard,* 366 Pa.Super. 482, 531 A.2d 520 (1987). A conditional privilege may also apply when a communication is made upon a proper occasion, for a proper motive, in a proper manner and based upon reasonable cause. *Rutherfoord v. Presbyterian–University Hospital,* 417 Pa.Super. 316, 612 A.2d 500 (1992). Pennsylvania courts have held that one instance in which the conditional privilege applies is communications among management-level personnel concerning an employee's job performance. *See, e.g. Id.* 612 A.2d at 507.

■ Once a matter is conditionally privileged, the plaintiff must establish that the defendant abused that conditional privilege. *Elia,* 634 A.2d at 661. Abuse of the privilege can be evidenced by proof that the publication was: (1) actuated by malice or negligence; (2) made for a purpose other than that for which the privilege is given; (3) made to a person not reasonably believed to be necessary for the accomplishment of the purpose of the privilege; or (4) includes defamatory matter not reasonably believed to be necessary for the accomplishment of the purpose of the privilege. *Id.*

■ Furthermore, it is useful to note at this point that courts have repeatedly held that § 301 preempts defamation claims predicated upon allegedly false statements made during the course of a grievance procedure. Because our own Third Circuit has not yet ruled in this context, we find it instructive to look to the rulings of other circuits.

The Ninth Circuit has held that a state law defamation claim based on allegedly defamatory statements made in the context of disciplinary investigations is preempted by § 301. *See Scott v. Machinists Automotive Trades D. Lodge 190,* 827 F.2d 589 (9th Cir.1987) (discussing *Green v. Hughes Aircraft Co.,* 630 F.Supp. 423 (S.D.Cal.1985)); *see also, Shane*

*v. Greyhound Lines, Inc.,* 868 F.2d 1057, 1063 (9th Cir.1989). In *Scott,* the allegedly defamatory statements were made during a counseling session and during the prearbitration meetings and investigative hearings. The court held that "the defamation claim cannot be evaluated apart from the grievance procedure provided by the contract, and thus is preempted by federal labor law." *Scott,* 827 F.2d at 594. The court, however, carefully distinguished *Scott* from its previous holding in *Tellez v. Pac. Gas and Elec. Co.,* 817 F.2d 536 (9th Cir.1987), in which it had held that a plaintiff's state law defamation claim was not preempted by § 301. In *Tellez,* an employee was allegedly injured by a letter distributed by the employer, falsely accusing the employee of buying cocaine on the job. The court noted that the significant factor in its determination was the fact that the statements did not occur during the course of any mandated grievance procedure. *Scott* and *Tellez* thus established a sharp demarcation, at least in the Ninth Circuit, between statements made within the context of disciplinary proceedings and those made outside of that realm.

District courts have generally adhered to the distinction outlined by the Ninth Circuit. The district court in *Monsour v. Delco Remy, Plant 25,* 851 F.Supp. 245, 246 (S.D.Miss.1994), surveyed district court opinions from around the country on the issue of § 301 preemption of state law defamation claims and found that preemption was likely if a grievance or disciplinary procedure was involved. The court cited fourteen district court opinions in all and noted that, "in all cases where claims were ruled preempted, the claims arose either directly out of conduct relating to the grievance and arbitration procedure or questions were presented whether an employer's conduct was in accordance with its rights and obligations under the collective bargaining agreement." *Id.* at 247.[9]

9. The cases cited within *Monsour* are as follows: *See, e.g., Merchant v. Communication Workers of America,* No. 93–2394, 1993 WL 475480 (E.D.La. Nov. 4, 1993) (defamation claim against union agent who represented plaintiff in grievance proceeding for agent's having ad-

vised union vice-president's administrative assistant of terms of grievance settlement preempted since terms of collective bargaining agreement were required to be interpreted to determine if agent's actions related to his duties for union as prescribed by the agree-

A similar result was also reached by two Fifth Circuit cases. In *Strachan v. Union Oil Co.*, 768 F.2d 703 (5th Cir.1985) and *Bagby v. General Motors Corp.*, 976 F.2d 919 (5th Cir.1992), the Fifth Circuit held that state tort claims for defamation based on actions taken by an employer in accordance with disciplinary provisions of a CBA are generally preempted by § 301 because they require an interpretation of the CBA. The Fifth Circuit cogently and clearly articulated the policy behind its rulings:

> ment); *Crawford v. TRW, Inc.*, 815 F.Supp. 1028 (E.D.Mich.1993) (LMRA completely preempted union official's defamation and infliction of emotional distress claims based on statements contained in posted notice detailing settlement of employee's unfair labor practice charge); *Chube v. Exxon Chem. Americas*, 760 F.Supp. 557 (M.D.La.1991) (employee's claims for intentional infliction of emotional distress and defamation arose out of alleged wrongful termination and required interpretation of terms of collective bargaining agreement and were thus preempted by LMRA); *Barbe v. Great Atlantic & Pacific Tea Co., Inc.*, 722 F.Supp. 1257 (D.Md.1989) (employee's defamation and intentional infliction of emotional distress claims against employer based on letter from employer to union accusing employee of falsifying company documents required interpretation of collective bargaining agreement which provided for termination for "just cause" including "dishonesty" and thus were preempted by LMRA); *Sewell v. Genstar Gypsum Prods. Co.*, 699 F.Supp. 1443 (D.Nev. 1988) (employee's claim of emotional distress premised on employer's alleged outrageous conduct relating to discharge preempted where employee failed to show that acts alleged to have caused emotional distress arose independent of employment conditions governed by collective bargaining agreement); *Durrette v. UGI Corp.*, 674 F.Supp. 1139 (M.D.Pa.1987) (claims for defamation and infliction of emotional distress challenging employer's having accused plaintiff of too many unexcused absences were intertwined with circumstances surrounding employee's termination and thus preempted by LMRA since discharge was governed by collective bargaining agreement); *Peffley v. Durakool, Inc.*, 669 F.Supp. 1453 (N.D.Ind.1987) (employee's charge that employer defamed her in termination letter by accusing her of dishonesty preempted by LMRA; claim was inextricably intertwined with collective bargaining agreement because it implicated same analysis of facts as would inquiry under "just cause" provisions of agreement and required interpretation of term "dishonesty" which provided ground for termination under agreement); *Childers v. Chesapeake and Potomac Telephone*

In simple terms each of these employees was suspected of violating the collective agreement in a way which would subject them to discipline by the company.... Both were suspended during the investigation. The investigations were negative, and they were exonerated and returned to full duty. This routine procedure occurs thousands of times every year under collective bargaining agreements throughout the United States. No matter in what glamorous garb it is dressed, the basic

> *Co.*, 670 F.Supp. 624 (D.Md.1987) (employee's state law claim of intentional infliction of emotional distress resulting from alleged unfair and retaliatory discharge preempted); *Hull v. Central Transport, Inc.*, 628 F.Supp. 784 (N.D.Ind.1986) (defamation claim based on statements made in grievance and arbitration process preempted by LMRA; claim based on comments of employer's official to police detective and state employment security commission not preempted); *Gillis v. Reynolds*, No. CV 84–HM–5319–NW, 1986 WL 15711 (N.D.Ala. Jan. 27, 1986) (employee's claim that employer libeled and slandered him by suspending him and communicating to union representatives and local law enforcement authorities that he was suspected in connection with arson preempted since employer was acting within the rights given it under collective bargaining agreement in suspending him pending further investigation); *Gregory v. Simon Bros., Inc.*, 640 F.Supp. 1252 (N.D.Ind.1986) (defamation claim of employee preempted by LMRA; alleged defamatory statements were made as direct result of procedures required by collective bargaining agreement and resolution of case would require definition and interpretation of scope of terms of agreement); *Seid v. Pacific Bell, Inc.*, 635 F.Supp. 906 (S.D.Calif.1985) (alleged torts of negligence, defamation and intentional infliction of emotional distress which arose out of investigation proceedings leading to discharge covered by collective bargaining agreement's grievance and arbitration mechanism and therefore preempted); *Green v. Hughes Aircraft Co.*, 630 F.Supp. 423 (S.D.Calif.1985) (defamation action based on employer's having accused employee of theft of sandwich from company cafeteria in incident report and subsequent investigation preempted since discipline of employees was governed by collective bargaining agreement); cf. *Cole v. Pathmark of Fairlawn*, 672 F.Supp. 796 (1987) (employee's discharge claim preempted by LMRA but claims for false arrest and malicious prosecution stemming from employee's arrest for shoplifting from employer not preempted; employee's injuries resulted not from discharge but from investigation and arrest on theft charges).

*Monsour*, 851 F.Supp. at 246–47.

thrust of the appellants' claim is that a suspension and investigation for possible disciplinary action itself constitutes a tort under state law.... To hold otherwise in this case would subject thousands of grievance procedures involving disciplinary investigations and disciplinary actions ... to lawsuits asserting state court claims. The conclusion that such claims are preempted by the [LMRA] reveals the wisdom and necessity of the established legal principle. Otherwise, the critically important aspect of collective bargaining which is involved in the establishment of the grievance procedure to protest breaches of labor contracts would be destroyed.

*Strachan*, 768 F.2d at 704–05. *See also Johnson v. Anheuser Busch, Inc.*, 876 F.2d 620 (8th Cir.1989) (employee's claim that coworkers slandered him by making false accusations about tire slashing incident and that the statements resulted in his discharge could not be resolved without interpreting or analyzing the terms of CBA, and thus was preempted by § 301); *Hasten v. Phillips Petroleum Co.*, 640 F.2d 274 (10th Cir.1981) (Federal labor law policy requires absolute privilege rule as to communications made within context of proceedings provided for by collective bargaining agreement and its provisions for grievance machinery).

Surveying our own Circuit, there are only a few district courts that have squarely dealt with this particular area of preemption analysis. In *Meier v. Hamilton Standard Electronic Systems*, 748 F.Supp. 296 (E.D.Pa. 1990), plaintiff alleged a state law claim for defamation against his employer based on alleged publications by the employer accusing plaintiff of trafficking and using controlled substances on employer's property. Judge Ditter noted that a state defamation claim would be preempted if the alleged defamatory comments were made in the context of a disciplinary or grievance investigation. *Id.* at 299. However, he declined to find preemption of the state court claim in that case because the crux of plaintiff's complaint centered on allegations that were outside of the scope of the CBA. He thus rejected defendants' arguments that the situation was in keeping with the *Scott* line of cases and instead found it analogous to the

situation the Ninth Circuit was confronted with in *Tellez. Id.* at 301. *See also Parke v. Bethenergy Mines, Inc.*, 732 F.Supp. 587 (W.D.Pa.1990) (state law defamation claim not preempted because claim encompassed actions outside of scope of CBA). *But see Durrette v. UGI Corp.*, 674 F.Supp. 1139 (M.D.Pa.1987) (state law slander claim preempted by § 301 because inextricably intertwined with propriety of dismissing plaintiff under CBA); *Pachick v. Friedman's Exp., Inc.*, 664 F.Supp. 944 (M.D.Pa.1986) (state law defamation claim preempted by § 301 where claims based on same acts and conduct which formed basis of employee's breach of fair representation and contract claims).

Turning to the facts of the situation at bar, we note first that plaintiff makes statements in both his complaint and Response to the Motion to Dismiss to the effect that the statements in question were published to persons outside the disciplinary proceedings. The relevant passages from plaintiff's complaint are as follows:

\* \* \* \* \* \*

11. On or about August 27, 1993, in Berks County the Defendants falsely and maliciously charged the Plaintiff with fraudulent conduct stating that he had falsified a doctor's excuse note, which charge was a factor in Plaintiff's termination of his employment by Corporate Defendant.

\* \* \* \* \* \*

16. The statement identified in paragraph 11 was widely published and circulated inside and outside the Corporate Defendant's plant among the Plaintiff's co-workers and friends and diverse other persons.

\* \* \* \* \* \*

Aside from these types of conclusory statements within his pleadings, however, plaintiff has not offered any evidence to indicate that any publication occurred beyond the disciplinary meetings of August 27 and September 16 and the arbitration proceedings. Defendants deny plaintiff's assertions and have included sections of the oral depositions of Benien and Brown to support their position that discussion of plaintiff's alleged miscon-

duct did not occur outside of the disciplinary proceedings. *See* Exhibit A, Defendants' Reply to Plaintiff's Opposition to Defendant's Motion to Dismiss.

In *Celotex Corp. v. Catrett,* 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986), the Supreme Court held that unsupported allegations in pleadings are insufficient to raise a genuine issue of material fact and prevent grant of summary judgment. The Court noted that,

> The language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial.

*Id.* at 323, 106 S.Ct. at 2553. *See also Appelmans v. City of Philadelphia,* 826 F.2d 214 (3d Cir.1987); *Falcone v. Columbia Pictures,* 805 F.2d 115 (3d Cir.1986); *Wisniewski v. Johns–Manville Corp.,* 812 F.2d 81 (3d Cir. 1987). Because the substantial case law discussed above indicates that § 301 preemption is appropriate where allegedly defamatory statements were made in the context of a disciplinary or grievance procedure, one of the elements essential to the plaintiff's claim would be a showing that publication occurred outside of this realm. In this instance, plaintiff took pre-complaint discovery and, other than the conclusory statements in the complaint and Reply to Defendants' Motion to Dismiss, plaintiff offers no detailed evidence to substantiate his claim that defamatory remarks were published by his employer to persons outside of the disciplinary context. Plaintiff has not even attempted to support this contention with any affidavits, depositions or any other materials indicating how or when publication might have occurred. He does not indicate what specifically might have been said, and he does not point to any specific individuals either inside or outside the Company to whom publication might have occurred. Furthermore, it is not even

clear from plaintiff's pleadings whether the alleged publications were written or oral.

Accordingly, we must find that no genuine issue of material fact exists with regard to this issue. *See Bagby,* 976 F.2d at 921 (summary judgment proper under *Celotex* when plaintiff offered only unsupported allegations in the pleadings regarding an element of his defamation claim). Therefore, we will proceed with the remainder of our analysis under the assumption that the defamation claim refers to remarks made during the course of the disciplinary proceedings.

As mentioned above, in order to determine if preemption is warranted in this situation, we must first decide whether the state law defamation claim can be resolved without resort to the CBA. We believe that it obviously cannot and that therefore preemption of the state claim is necessary. The most obvious element of the defamation claim that would require interpretation of the CBA is the determination of any privilege(s) held by the employer. Only by examining the terms of the grievance procedure within the CBA could a court determine whether the defendants were privileged to make any alleged defamatory statements. As the court faced with a situation analogous to the one at hand noted,

> [i]f the defamation claim were not preempted, the state court would be called upon to determine whether the letter to the union was privileged.... In order to resolve the privilege defense, the state court would have to determine the relative interests of the union, the employer and the employee in such a communication. By permitting a state court to make a ruling of this type would violate the policy of having the federal courts develop a uniform body of federal labor law as it applies to collective bargaining agreements....

*Barbe,* 722 F.Supp. at 1261–62.[10]

The CBA at issue has an elaborate set of grievance procedures in place which specify who may be involved in any particular disciplinary proceeding. The allegations of defamation appear inextricably bound to the re-

---

10. In *Barbe,* an employee's defamation claim against his employer based on a letter from the employer to the union accusing employee of fal-

sifying company documents required interp·etation of the CBA and thus was preempteɹ by § 301.

quirements placed upon the employer by the CBA, and in fact the CBA provided for the meetings held on August 27 and September 16. Although we note that generally the CBA appears to favor the joint involvement of Dana and the Union in grievance proceedings, any resolution of this case under a state tort theory would require the interpretation of the CBA and consequently is a determination that cannot be made by a state court. It is also our belief, although we see no need to discuss them at this time, that the remainder of the elements needed to make out a defamation claim cannot be proven without reference to, to varying degrees, the CBA.

Furthermore, to make a determination regarding the elements of defamation in this case, a court would have to conduct the same factual inquiry into the events surrounding the grievance procedure as that which has already been conducted by the arbitrator. *See Peffley v. Durakool, Inc.,* 669 F.Supp. 1453 (N.D.Ind.1987). The possibility of inconsistent results arising from such a double inquiry is precisely the type of situation that the preemption doctrine was meant to address. *See Lingle,* 486 U.S. at 413, 108 S.Ct. at 1885 (holding that the policy behind § 301 dictates that arbitrators, not judges, should construe CBAs).

Our decision today is in line with the large body of case law that exists in this matter. Since we find that the defamatory statements at issue are only those within the context of the grievance proceedings, our decision fits squarely within the line of cases that found preemption in such a situation. Because plaintiff's defamation claim is preempted by federal labor law, it was properly removed to this court pursuant to 28 U.S.C. § 1441(b), and we therefore deny plaintiff's Motion to Remand.[11]

11. As an additional matter, we note that the court is not bound by plaintiff's characterization of his claim in state tort language. In his Motion to Remand, plaintiff argues that since his complaint exclusively sets forth a state tort cause of action, and makes no mention of the CBA, it cannot be preempted by federal labor law. The plaintiff is incorrect in this belief. It is true that a court, under the well-pleaded complaint rule, generally looks to the plaintiff's complaint to determine the applicability of federal law. *See Gully v. First National Bank,* 299 U.S. 109, 57 S.Ct. 96, 81 L.Ed. 70 (1936). However, an ex-

## IV. *MOTION FOR SUMMARY JUDGMENT*

Because plaintiff's state law defamation claim is preempted by § 301 of the Labor Management Relations Act, it must be considered as a § 301 claim and analyzed by application of federal common law. Recast under § 301, we hold that plaintiff's claim must be dismissed.

An employee protected by a collective bargaining agreement may sue his employer under § 301 only after he has pursued his contractual grievance remedies and established that his rights of fair representation were violated. *See Krushinski v. Roadway Express Inc.,* 627 F.Supp. 934, 938 (M.D.Pa. 1985); *see also Vosch v. Werner Continental,* 734 F.2d 149 (3d Cir.1984); *Scott,* 827 F.2d at 592–93. As an initial matter, although plaintiff did exhaust his contractual remedies under the CBA by proceeding to arbitration, the terms of the CBA indicate that the decision of the arbitrator is final and binding on all parties. *See* Article 10, CBA.

The Supreme Court in *Lingle* affirmed the sacrosanctity of the arbitrator as the final interpreter of a CBA when it noted,

A rule that permitted an individual to sidestep available grievance procedures would cause arbitration to lose most of its effectiveness, ... as well as eviscerate a central tenet of federal labor contract law under § 301 that it is the arbitrator, not the court, who has the responsibility to interpret the labor contract in the first instance.... Today's decision should make clear that interpretation of collective bargaining agreements remains firmly in the arbitral realm; judges can determine ques-

ception has developed to this rule such that if it is found that Congress intends that a federal statute completely preempt an area of state law, any complaint alleging that area of state law is presumed to allege a claim arising under federal law. The complaint may thus be removed to federal court. *See Caterpillar, Inc. v. Williams,* 482 U.S. 386, 107 S.Ct. 2425, 96 L.Ed.2d 318 (1987). The Supreme Court has held that the Labor Management Relations Act is such a statute. *See Franchise Tax Board v. Construction Laborers Vacation Trust,* 463 U.S. 1, 103 S.Ct. 2841, 77 L.Ed.2d 420 (1983).

tions of state law involving labor-management relations only if such questions do not require construing collective bargaining agreements.

*Lingle,* 486 U.S. at 411, 108 S.Ct. at 1884 (citations omitted).

It is not the province of this court to render an interpretation of a CBA when an arbitrator has already done so. As discussed above, a court deciding this defamation claim would be required to make the same inquiry into the CBA as has already been made by the arbitrator. *See Peffley,* 669 F.Supp. at 1462. Relevant issues have already been decided and the possibility of inconsistent results being rendered by a court regarding the same dispute and the same CBA would have quite a chilling effect on federal labor policy indeed. When unions and employers have already taken the welcome step of installing a system of grievance resolution without need for resort to the courts, they should be able to rely on their bargain and the principles of uniformity and certainty that guide § 301. Their negotiated choice should not be diluted or second guessed by intrusion of the courts. To hold otherwise,

> would allow the threat of defamation suits for comments made during grievance hearings to introduce an element of uncertainty into the grievance process.... As a result, parties would be much less willing to agree to grievance mechanisms that are fraught with potential liability under state tort law.

*Hull,* 628 F.Supp. at 789.

Plaintiff, through the arbitration award, has already been reinstated to his former position. He is now trying to circumvent the very process that produced this desired result by alleging a state claim of defamation. We will not permit him to obtain the benefit of his bargain without holding up his end of the bargain. In any event, plaintiff has never alleged that his Union failed to properly pursue his claims, and thus violated his rights of fair representation, so it is not possible for him to pursue his claims in federal court. *See Krushinski, supra.* We therefore grant defendants' Motion for Summary Judgment.

## V. CONCLUSION

For the reasons outlined in the foregoing memorandum, we will deny plaintiff's Motion to Remand and grant defendants' Motion for Summary Judgment.