Richard A. **MEIER**

v.

**HAMILTON STANDARD ELECTRONIC SYSTEMS, INC., TELEDYNAMICS DIVISION and Michael G. Bowen.**

**Civ. A. No. 89–4852.**

United States District Court,
E.D. Pennsylvania.

Sept. 28, 1990.

Jeffrey Alan Reed, Philadelphia, Pa., for
plaintiff.

John E. Quinn, James B. Herman, Philadelphia, Pa., for defendants.

## MEMORANDUM AND ORDER

DITTER, District Judge.

This action was commenced in the Court of Common Pleas of Montgomery County, then removed to this court. Before me is plaintiff's motion to remand. For the reasons that follow, plaintiff's motion is granted in part and denied in part.

On August 7, 1986, plaintiff was discharged from his employment with defendant Hamilton Standard Electronic Systems, Inc., Teledynamics Division ("Teledynamics"), following an investigation by defendant Bowen, labor relations manager for Teledynamics, and others into the alleged use and sale of "controlled substances" at Teledynamics' Fort Washington, Pennsylvania, facility. Plaintiff filed an eight count complaint in state court on May 31, 1989. In count one, plaintiff alleges that defendants defamed him by publishing false statements "on or about August 7, 1986, and thereafter" accusing plaintiff of trafficking and using controlled substances on Teledynamics' property. In count two, plaintiff claims that the conduct described in count one amounted to "intentional infliction of emotional distress." Count three alleges that defendants' false publications constituted an invasion of privacy. In count four, plaintiff maintains that defendants engaged in "wrongful use of civil process" by requesting that plaintiff be denied unemployment compensation benefits upon his discharge and by subsequently appealing an award of benefits to plaintiff. In count five, plaintiff alleges that his "wrongful discharge" constituted a "breach of implied contract" with Teledynamics. In count six, plaintiff avers that his "wrongful discharge" and the investigation which preceded it amounted to a "trespass." Plaintiff claims in count seven that Bowen intentionally interfered with plaintiff's contract performance with Teledynamics. Finally, in count eight, plaintiff contends that Bowen intentionally interfered with plaintiff's prospective employment contracts with other companies.

In their notice of removal, defendants state that although plaintiff has not invoked section 301(a) of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185(a), in his complaint, his claims, all of which implicate to varying degrees the collective-bargaining agreement ("CBA") which governed plaintiff's employment, are preempted by the federal statute and thus are within the federal court's original jurisdiction. In his motion to remand, plaintiff insists that his claims arise solely under Pennsylvania tort and common laws and do not hinge upon a violation of the CBA. In particular, plaintiff maintains that the crux of his complaint concerns improper behavior on the part of Bowen and Teledynamics *following* his discharge, behavior which could not implicate the CBA since the CBA does not govern the behavior of management with respect to former employees.

At my direction, the parties attempted to resolve the jurisdictional issue and engaged in limited discovery to that effect. After informing me that they were unable to reach an agreement, the parties filed supplementary briefs concerning the motion to remand. Thereafter, however, the parties submitted a stipulation agreeing to the dismissal of counts five (wrongful discharge—breach of implied contract) and six (wrongful discharge—trespass). It is therefore unnecessary for me to consider whether counts five and six are preempted by section 301.[1]

---

1. In their notice of removal, defendants maintain that plaintiff invoked the grievance and arbitration procedures of the CBA following his discharge and prevailed. According to defendants, an arbitrator entered an award reinstating plaintiff without loss of seniority or other rights and granting back pay in accordance with section 12.04 of the CBA. Although plaintiff neither admits nor denies that he obtained this relief, it is irrelevant whether defendants' recitation of the post-termination proceedings is accurate. Where the resolution of a state law claim requires the interpretation of a CBA, that claim is preempted, regardless of whether plaintiff has chosen to invoke the CBA to address his grievances. *Lingle v. Norge Division of Magic Chef, Inc.*, 486 U.S. 399, 108 S.Ct. 1877, 100 L.Ed.2d 410 (1988).

While it is axiomatic that a case arises under federal law only if a federal question appears on the face of plaintiff's "well-pleaded complaint," *see, e.g., Gully v. First Nat'l Bank,* 299 U.S. 109, 57 S.Ct. 96, 81 L.Ed. 70 (1936); *Westmoreland Hosp. Ass'n v. Blue Cross of Western Pennsylvania,* 605 F.2d 119, 122 (3d Cir.1979), *cert. denied,* 444 U.S. 1077, 100 S.Ct. 1025, 62 L.Ed.2d 759 (1980), a corollary of the "well-pleaded complaint rule" is the "artful pleading doctrine," which provides that a plaintiff may not defeat removal by failing to plead necessary federal questions. *Franchise Tax Board v. Construction Laborers Vacation Trust,* 463 U.S. 1, 22, 103 S.Ct. 2841, 2852, 77 L.Ed.2d 420 (1983). Where a federal statute completely preempts a state cause of action under the "artful pleading doctrine," also known as the "preemption doctrine," I must reject the literal recitals of plaintiff's complaint and (a) recharacterize his state law claims as federal claims; (b) exercise jurisdiction over these claims; and (c) proceed to consider whether he should prevail under federal law. *Hunter v. United Van Lines,* 746 F.2d 635, 641 (9th Cir.1984).

In *Allis–Chalmers Corp. v. Lueck,* 471 U.S. 202, 105 S.Ct. 1904, 85 L.Ed.2d 206 (1985), the Supreme Court articulated the test for determining whether section 301 preempts a state tort claim as "whether the [state] tort action ... confers nonnegotiable state-law rights on employers or employees independent of any right established by contract, or, instead, whether evaluation of the tort claim is *inextricably intertwined* with consideration of the terms of the labor contract." *Id.* at 213, 105 S.Ct. at 1912. (emphasis added). Where the disposition of a state claim is *"substantially dependent upon"* analysis of the terms of an agreement made between the parties in a labor contract," the Court instructed that the state claim "must

either be treated as a § 301 claim ... or dismissed as preempted by federal labor-contract law." *Id.* at 220, 105 S.Ct. at 1915. (emphasis added). Under *Allis Chalmers,* therefore, I must decide whether plaintiff's claims derive directly from or depend primarily upon an interpretation of the CBA between plaintiff and Teledynamics.[2]

## COUNTS ONE THROUGH THREE

In counts one through three, plaintiff accuses Bowen and other agents of Teledynamics of defamation, intentional infliction of emotion distress and invasion of privacy. Plaintiff generally maintains that defendants published defamatory statements accusing plaintiff of using and trafficking in drugs "to numerous individuals, including, but not limited to, employees of Defendant Teledynamics; friends, neighbors and relatives of Plaintiff; various employees of the Commonwealth of Pennsylvania; employees of the United States government; and employees of other companies (suppliers & customers of Teledynamics and potential employers of Plaintiff Meier)." Plaintiff contends that these allegedly illicit publications occurred on the date of his discharge "and thereafter on numerous occasions." Although plaintiff does not describe the alleged publications or list the specific individuals to whom they were made, it is clear that he is contending that defamatory statements were made to individuals who were outside the scope of the Teledynamics CBA who would not have had a legitimate interest in them. It follows that counts one through three of plaintiff's complaint are not "inextricably intertwined" or "substantially dependent" on an interpretation of the CBA.

Defendants cite *Scott v. Machinists Automotive Trades District Lodge No. 190 of Northern California,* 827 F.2d 589 (9th Cir.1987), to support their assertion that

---

**2.** In his motion to remand and supplementary filings, plaintiff makes much of the fact that counts seven and eight of his complaint alleged improper behavior on the part of defendant Bowen only. Plaintiff has not alleged that Bowen was acting in his individual, as opposed to his official, capacity at the time he committed the acts alleged in counts seven and eight. The

lawsuit is against Bowen in his capacity as labor relations manager for Teledynamics. As such, he is bound by the CBA and his behavior is governed by the Labor Management Relations Act. The fact that Bowen is the only defendant named in counts seven and eight is irrelevant to the question of whether those claims are preempted by section 301.

plaintiff's defamation and emotional distress claims are preempted by section 301. In *Scott*, the plaintiff contended that his supervisor had made defamatory remarks about him during the course of certain disciplinary investigations concerning the plaintiff. He alleged that he suffered emotional distress as a result of these remarks and others that were made during the processing of plaintiff's grievances under the CBA. The court concluded that plaintiff's state tort claims were preempted because they concerned the disciplinary and grievance procedures covered by the CBA. The propriety of defendant's behavior would necessarily be evaluated under the CBA; therefore, any rights to which plaintiff was entitled would stem solely from the language of the agreement.

To the extent that Meier has alleged in counts one through three that defamatory statements were made outside the limited context of the investigation into drug trafficking at the Teledynamics facility or to individuals who had no connection with the grievance procedures he initiated following his discharge, his claims for defamation, emotional distress, and invasion of privacy are not governed by the CBA. Section 3.01 of the Agreement gives Teledynamics "the right to establish reasonable rules and regulations" and "the right to discipline, suspend and discharge for proper cause." At section 3.03, "[t]he Union agrees to support and assist the Company in the enforcement of the safety regulations." Section 3.05 states that "[e]mployees ... shall be discharged or suspended only for just and proper cause." Nowhere in the CBA do the union and the company agree that management shall publish statements concerning employees suspected of drug trafficking. In fact, the agreement is silent on the disciplinary formalities which management may employ when an employee is suspected of committing a crime or of breaking company regulations.[3] *Cf. Shane v. Greyhound Lines, Inc.*, 868 F.2d 1057,

1063 (9th Cir.1989) (defamation claim preempted because allegedly offensive statements contained in disciplinary and discharge notices required under company's collective bargaining agreement). Defendants maintain that section 3.01 of the agreement gives management the right to conduct "investigations." The copy of the agreement provided to me contains no such provision; nonetheless, even assuming that such a right were reasonably inferred from the right to discipline, there is no suggestion in the agreement that the results of these investigations may be disseminated to or discussed with those who would not have authority to discipline employees. Because plaintiff has averred that statements were published beyond the "need to know" level, defendants' invocation of an implicit right to conduct disciplinary investigations does not mandate preemption. *Cf. Green v. Hughes Aircraft Co.*, 630 F.Supp. 423 (S.D.Cal.1985) (where allegedly defamatory statements published in context of disciplinary report and investigation, and disciplinary procedures governed by collective-bargaining agreement, state defamation claim preempted).

Likewise, the grievance and arbitration provisions at articles eleven and twelve of the CBA limit dispute resolution to issues concerning the interpretation, application, or violation of the agreement. *See* CBA at 11.01, 12.02. There is no internal procedure to redress grievances concerning alleged defamation, infliction of emotional distress, and invasion of privacy which occurred independent of the decision to discharge plaintiff. Although section 12.04 of the arbitration provision empowered an arbitrator to award back pay and to reverse penalties assessed by management, there is nothing which authorizes an arbitrator to award compensatory damages for harm suffered beyond the loss of a job, benefits, and seniority.

---

**3.** Defendants failed to provide me with a copy of the safety regulations mentioned in section 3.03 of the agreement. I therefore cannot determine to what extent, if any, these regulations afforded defendants the right to investigate suspected drug trafficking and the right to publish

the results of investigations. Because I must construe the facts in plaintiff's favor, I will assume that the safety regulations confer no additional rights on defendants which are not contained in the collective-bargaining agreement.

As contrasted with *Scott*, Meier's case is analogous to the facts in *Tellez v. Pacific Gas and Elec. Co., Inc.*, 817 F.2d 536 (9th Cir.), *cert denied*, 484 U.S. 908, 108 S.Ct. 251, 98 L.Ed.2d 209 (1987). In *Tellez*, the Ninth Circuit reversed summary judgment awarded by the district court in defendant's favor and remanded plaintiff's claims against his employer for defamation, intentional infliction of emotional distress, and negligent infliction of emotional distress. Plaintiff alleged that one of the managers employed by defendant had defamed him and caused him emotional distress by circulating a suspension letter which accused him of purchasing cocaine at work. Although plaintiff successfully invoked the grievance procedures pursuant to the company's CBA and was reinstated with back pay, he maintained that the agreement did not govern the manager's conduct and that he was therefore entitled to pursue beyond that which was provided for in the agreement. The court of appeals determined that the district court improperly held that plaintiff's claims were preempted by section 301. Finding that the circulation of the suspension letter "was neither required by the collective bargaining agreement, nor a part of the grievance process," *Tellez*, 817 F.2d at 538, the court concluded that "permitting Tellez's state defamation claim to proceed does not impinge on the authority of the arbitration process contemplated by the parties' collective-bargaining agreement." *Id.* Similarly, since plaintiff's emotional distress claims were predicated on his defamation claim, "examination or interpretation of the agreement would not help to resolve [these] claim[s]." *Id.* at 539.

The reasoning in *Tellez* is compelling and is applicable here. Although counts one through three of plaintiff's complaint are pled generally, and therefore challenge conduct some of which may arise under the CBA and some of which may not, remand is nonetheless appropriate. State courts have concurrent jurisdiction over section 301 claims, *Charles Dowd Box Co. v. Courtney*, 368 U.S. 502, 82 S.Ct. 519, 7 L.Ed.2d 483 (1962); hence, the court of common pleas has the power to analyze plaintiff's individual claims in counts one through three to determine which issues are preempted and which issues may properly be litigated in state court.

COUNT FOUR

■ In count four, plaintiff maintains that defendants acted in a grossly negligent manner and without probable cause in opposing his request for unemployment compensation benefits, which constituted wrongful use of civil process. Plaintiff eventually succeeded on appeal in obtaining unemployment compensation benefits. He claims that defendants reasonably should have known that he was not involved in any drug transactions and that the statements made by three Teledynamics employees implicating plaintiff in illicit conduct—statements which formed the basis of defendants' decision to discharge plaintiff and to challenge his application for unemployment benefits—were false and were coerced by defendants and their agents.

Under Pennsylvania law, an employee is ineligible for unemployment compensation benefits where "his unemployment is due to his discharge ... for willful misconduct connected with his work." 43 Pa.S.A. § 802(e). It is incumbent upon an employer to protest an award of benefits where he reasonably believes that an employee's discharge is the result of willful misconduct. Whether defendants acted properly or without probable cause with respect to plaintiff's application for unemployment compensation benefits will depend entirely on whether defendants reasonably believed that plaintiff had engaged in willful misconduct by violating the company's safety regulations. Any evaluation of defendants' communications to the Unemployment Compensation Board is therefore "substantially dependent" upon an analysis of the CBA and the safety regulations and whether plaintiff had a reasonable basis under the agreement and the regulations to rely on the statements of its employees and to base plaintiff's discharge on these statements. The issue of the propriety of defendant's conduct before the Unemployment Compensation Board does not exist outside the scope of the CBA. For this reason,

plaintiff's claim for "wrongful use of civil process" is preempted by section 301 of the LMRA and must be dismissed. Plaintiff's exclusive remedy for this type of claim lies within the grievance procedures of the CBA at articles eleven and twelve. Because plaintiff has already invoked the grievance procedures and has obtained a favorable result, this is the only relief to which he is entitled with respect to the allegations in count four.

COUNT SEVEN

■ Plaintiff avers in count seven that defendant Bowen intentionally interfered with the employment contract between plaintiff and defendant Teledynamics without privilege or justification as a result of his conduct during the disciplinary investigation of plaintiff and thereafter. The propriety of Bowen's behavior is "inextricably intertwined" with a determination of whether Bowen acted within the scope of article three of the CBA. If Bowen's actions were within his "right to discipline, suspend and discharge," CBA at 3.01, then he acted with justification. Alternatively, if he exceeded the scope of his authority, then plaintiff's sole remedy is to submit a grievance pursuant to article eleven. Plaintiff can hardly claim that he has a cause of action under count seven which exists independent of the CBA in light of his deposition testimony that the "contract" with which Bowen interfered is the CBA. *See* Meier Dep. at 126. Count seven is preempted by section 301 of the LMRA and must be dismissed.

COUNT EIGHT

■ In count eight, plaintiff claims that defendant Bowen intentionally interfered with plaintiff's prospective contracts with third parties following plaintiff's discharge by informing employment recruiters and other labor relations or employment managers "that Plaintiff was terminated due to violations of company rules and regulations." Compl. at ¶ 73. This claim is not preempted by section 301. At the time of Bowen's alleged communications, plaintiff was no longer an employee of Teledynamics. Bowen's relationship with plaintiff

was not governed by the CBA and hence, any conduct by Bowen which concerned plaintiff would not be within the scope of the CBA. Unlike plaintiff's claim in count four for wrongful use of civil process, there is no Pennsylvania statute which requires or anticipates Bowen's behavior as alleged in count eight, even in the event that discharge were proper. Bowen claims that his communications were justified because he reasonably believed that plaintiff's discharge was for "just cause," or alternatively that his communications were privileged. Although the propriety of plaintiff's discharge is governed by the CBA and is preempted by section 301, the reasonableness of Bowen's conduct depends on additional factors, such as whether Bowen intended to harm plaintiff and whether he knew at the time the communications were made that plaintiff had, in fact, not violated any company regulations. The fact that a court might take into consideration the propriety of plaintiff's discharge in determining whether Bowen's communications were "justified" does not mandate preemption, especially since the issue of whether plaintiff was discharged for just cause has already been decided and is binding in future proceedings. *See Allis Chalmers Corp.*, 471 U.S. at 211, 105 S.Ct. at 1911 ("[N]ot every dispute concerning employment or tangentially involving a provision of a collective-bargaining agreement, is pre-empted by § 301.").

There are no provisions in articles eleven or twelve of the CBA which allow former employees to pursue remedies against management for alleged torts which occur outside the scope of the employment relationship; hence, plaintiff has no remedy for intentional interference with prospective contracts under the CBA. Similarly, if any "privilege" exists which protects Bowen's communications, it could not arise out of the CBA. Plaintiff's claim for intentional interference with prospective contracts must be left for the state court to resolve upon remand.

CONCLUSION

I will remand to the court of common pleas counts one through three and count

eight of plaintiff's complaint. Counts four and seven are preempted by section 301 of the LMRA. Judgment as to those counts will therefore be entered in favor of defendants. Plaintiff and defendants have stipulated to the dismissal of counts five and six.