**Brent WRIGHT, Plaintiff,**

v.

**PEPSI COLA COMPANY, Lou Papille, Sean Jackson, Rich Chaminski, Tom Rylie, Allison McKinnon and Bob Coggins, Defendants.**

**No. CIV.A.02–563–JJF.**

United States District Court,
D. Delaware.

Jan. 29, 2003.

Darryl K. Fountain, Esquire of Darryl K. Fountain, Esquire, Wilmington, Delaware. Attorney for Plaintiff.

Sean P. McDevitt, Esquire of Pepper Hamilton LLP, Wilmington, Delaware. Attorney for Defendants.

### *MEMORANDUM OPINION*

FARNAN, District Judge.

Pending before the Court are Defendants' Motion to Dismiss (D.I.2) and Plain-

tiff's Motion to Amend the Complaint (D.I.7). For the reasons discussed below, Defendants' Motion to Dismiss (D.I.2) will be granted in part and denied in part. Plaintiff's Motion to Amend (D.I.7) will be denied as moot.

### BACKGROUND

1. *Facts*

Plaintiff, Brent Wright, is a black male who has been employed at Pepsi Bottling Group, Inc. ("PBG") since May 1995. *See* Complaint, D.I. 7, at ¶ 37. Mr. Wright is a member of Teamsters Local 830, which is a party to a collective bargaining agreement ("CBA") with PBG. *See* D.I. 3, at 1; *see also* CBA, D.I. 3, Exhibit A. On September 3 1999, PBG terminated Mr. Wright's employment, stating he had thrown a trash can at another employee. *See* Complaint, D.I. 7, at ¶ 32; Arbitration Opinion and Award, D.I. 3, Exhibit A, at 2. Pursuant to the CBA, the parties submitted the dispute to arbitration, and on October 26 2000, the arbitrator ordered PBG to reinstate Mr. Wright with full back pay and benefits. *See* Complaint, D.I. 7 at ¶ 38; Arbitration Opinion and Award, D.I. 3, Exhibit A, at 12. PBG did not immediately reinstate Mr. Wright and the matter was again submitted to arbitration, where PBG was again ordered to reinstate Mr. Wright with back pay and benefits. *See* Arbitration Opinion and Award, D.I. 3, Exhibit B, at 13. On July 18 2002, the parties signed a Settlement Agreement and Release in which Mr. Wright released all claims in the instant civil action relating to PBG's alleged failure to pay proper back pay and benefits. *See* Settlement Agreement and Release, D.I. 10, Exhibit A, at ¶ 2 ("SA").

Nonetheless, on May 17, 2002, Plaintiff filed the instant law suit seeking damages under the following theories: violation of

his rights under the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution and under 42 U.S.C. § 1981 (Count I); intentional failure to pay and provide proper back pay and benefits (Count II); fraud and misrepresentation (Count III); malicious conspiracy to cause wrongful termination (Count IV); defamation (Count V); and wrongful/bad faith termination (Count VI). Subsequently, pursuant to the parties' stipulation, the Court dismissed Count II of Plaintiff's Complaint.[1] *See* D.I. 13.

Defendants now move, pursuant to Federal Rule of Civil Procedure 12(b)(6), to dismiss all Counts of the Complaint for failure to state a claim upon which relief may be granted.

### 2. *Legal Standard*

The instant Motion to Dismiss is brought under Rule 12(b)(6) of the Federal Rules of Civil Procedure. The purpose of a motion to dismiss pursuant to Rule 12(b)(6) is to test the legal sufficiency of a complaint. *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *Sturm v. Clark*, 835 F.2d 1009, 1011 (3d Cir.1987). In reviewing a motion to dismiss for failure to state a claim, "all allegations in the complaint and all reasonable inferences that can be drawn therefrom must be accepted as true and viewed in the light most favorable to the non-moving party." *Sturm*, 835 F.2d at 1011; *see also Jordan v. Fox, Rothschild, O'Brien & Frankel*, 20 F.3d 1250, 1261 (3d Cir.1994). A court may dismiss a complaint for failure to state a claim only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations. *Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984); *Jordan*, 20 F.3d at 1261.

## DISCUSSION

### 1. *Count I*

By their motion, Defendants contend that Count I of the Complaint should be dismissed for three reasons. First, an Equal Protection claim under the Fourteenth Amendment of the United States Constitution is not available against a private entity such as Defendants. Second, Plaintiff fails to show he has suffered an adverse employment action, which is a necessary element of a Section 1981 claim. Third, if Plaintiff's claim is construed as a claim under Title VII of the Civil Rights Act, 42 U.S.C. § 2000(e) *et seq.*, Plaintiff has failed to demonstrate that he has exhausted all of his administrative remedies. In particular, Plaintiff has not demonstrated that he has both filed a claim with the Equal Employment Opportunity Commission ("EEOC") and received a right to sue letter, which are necessary prerequisites to filing a valid Title VII claim.

Plaintiff does not respond to Defendant's Title VII or equal protection arguments. Regarding the Section 1981 claim, Plaintiff contends that he has suffered an adverse employment action because Defendants failed to provide correct back pay and benefits in accordance with the arbitration decision. However, Defendants point out that Plaintiff has since been reinstated with full back pay and benefits as a result of subsequent arbitration proceedings and has also signed a Settlement Agreement regarding the correct amount of back pay and benefits due to him. *See* SA, D.I. 10, Exhibit A, at ¶ 2.

---

1. Because Plaintiff's Motion to Amend the Complaint was intended to effectuate the parties' stipulation as to Count II by eliminating Count II from the Amended Complaint, the Court will deny Plaintiff's Motion to Amend as moot.

## A. Plaintiff's Equal Protection Claim

■ Plaintiff's Complaint alleges, "[d]efendants, when they violated Wright's right to equal protection of the laws under the Fourteenth Amendment to the United States Constitution, acted under color of state[ ] law." D.I. 7, at ¶ 43. However, the relevant legal inquiry here is whether PBG is a state actor, not whether PBG acted under color of state law.

The relevant portion of the Fourteenth Amendment states: "*No State* shall make or enforce any law which shall ... deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV (emphasis added). Defendants cite *Magill v. Avonworth Baseball Conference,* 516 F.2d 1328 (3d Cir.1975), in support of their contention that an Equal Protection claim is unavailable against a private entity. In *Magill,* the court stated, "[t]he Court has never held that discrimination by an otherwise private entity would be violative of the Equal Protection Clause ...." *Id.* at 1333 (quoting *Gilmore v. City of Montgomery,* 417 U.S. 556, 573–74, 94 S.Ct. 2416, 41 L.Ed.2d 304 (1974)). The Supreme Court has "pierced the ... veil of private, individual conduct to find state action" in three categories of cases: "(1) where state courts enforced an agreement affecting private parties; (2) where the state 'significantly' involved itself with the private party; and (3) where there was private performance of a government action." *Magill,* 516 F.2d at 1331. Because the instant case does not fall within any of the three above categories, the Court concludes that PBG's status as a private entity bars Plaintiff's Equal Protection claim.

## B. Section 1981 Claim

■ Plaintiff's initial burden in a Section 1981 claim includes the establishment of a prima facie case. *See Patterson v. McLean Credit Union,* 491 U.S.

164, 109 S.Ct. 2363, 105 L.Ed.2d 132 (1989) (applying *McDonnell Douglas* order of proof to 42 U.S.C. § 1981 claims); *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973) (establishing order of proof for Title VII employment discrimination claims). Plaintiff must show that (1) he is a member of a protected class; (2) he was qualified to hold the position from which he was terminated and his job performance was satisfactory; (3) he suffered an adverse employment action; and (4) the adverse action occurred in circumstances giving rise to an inference of discrimination on the basis of his membership in the protected class. *See McDonnell Douglas,* 411 U.S. at 802, 93 S.Ct. 1817.

■ In the instant case, the adverse employment action that Plaintiff claims to have suffered is termination by PBG and non-receipt of correct back pay. *See* D.I. 7, at ¶ 46; D.I. 6, at ¶ 15. In response, Defendants first contend that the termination was remedied through the arbitration process and therefore the adverse employment action is not actionable. *See* D.I. 3, at 5. As a result of the arbitration process, Plaintiff was reinstated with full back pay and benefits. Defendants also contend that Plaintiff cannot rely on his failure to receive correct back pay as the adverse employment action element because, in the Settlement Agreement, Plaintiff released all claims relating to Defendants' failure to provide proper back pay. *See* SA, D.I. 10, Exhibit A, at ¶ 2.

In *Almonte v. The Coca–Cola Bottling Co. of New York,* the court held:

> Whether [plaintiff's] ... termination was an initial action that ultimately resulted in no legally cognizable adverse effect of plaintiff's employment or, having been reinstated with full back pay and benefits, no further remedy is avail-

able to plaintiff, the result is the same. Having prevailed in arbitration, plaintiff may not now seek to recover a second time for his . . . termination.

959 F.Supp. 569, 572 (D.Conn.1997). Other courts have also held that remedial action removed any possible claims regarding an alleged adverse employment action. *See Howze v. Virginia Polytechnic Univ.,* 901 F.Supp. 1091 (W.D.Va.1995) (university's initial decision to deny tenure not actionable where employee was ultimately granted tenure and pay increase); *Wanamaker v. Columbian Rope Co.,* 907 F.Supp. 522, 534 (N.D.N.Y.1995) (finding no adverse employment action where plaintiff was terminated but continued to receive full salary and benefits because plaintiff "did not lose any pay or other tangible benefits").

Because Plaintiff has been reinstated with back pay and benefits and has released all claims relating to the amount of back pay due to him, the Court concludes that any adverse employment action Plaintiff may have suffered has subsequently been remedied and thus no further remedy is available to Plaintiff. Accordingly, the Court further concludes that Plaintiff has not satisfied the adverse employment action element of a prima facie case under Section 1981.

### C. *Title VII Claim*

■ As a prerequisite to a valid Title VII claim, a plaintiff must file a charge of discrimination with the EEOC and show that he has received a right to sue letter. *See* 42 U.S.C. § 2000(e)–5(e), 5(f)(1); *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 798, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973); *Fullman v. Philadelphia International Airport,* 49F.Supp.2d 434, 442–43 (E.D.Pa.1999). Because Plaintiff has not alleged in his Complaint that these steps have been taken, the Court con-

cludes that Plaintiff's Complaint cannot survive a Motion to Dismiss on this count.

### 2. *Counts III, IV and VI*

By their motion, Defendants contend that Counts III, IV and VI of the Complaint should be dismissed because they are state law claims that require an interpretation of the collective bargaining agreement ("CBA") and thus are preempted by Section 301 of the Labor Management and Relations Act ("LMRA"). Plaintiff does not respond to these contentions.

■ Section 301 of the LMRA provides:

Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this Act, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

29 U.S.C. § 185(a). Additionally, "if the resolution of a state-law claim depends upon the meaning of a collective-bargaining agreement, the application of state law . . . is preempted and federal labor-law principles . . . must be employed to resolve the dispute." *See Lingle v. Norge Division of Magic Chef, Inc.,* 486 U.S. 399, 405–06, 108 S.Ct. 1877, 100 L.Ed.2d 410 (1988) (citing *Allis–Chalmers Corp. v. Lueck,* 471 U.S. 202, 105 S.Ct. 1904, 85 L.Ed.2d 206 (1985)). The standard for evaluating whether a state tort claim is preempted by section 301 of the LMRA is "whether evaluation of the [state] tort claim is inextricably intertwined with consideration of the terms of the labor contract" or whether disposition of the claim is "substantially dependent upon analysis of the terms of an agreement made between the parties in a labor contract." *See*

*Allis–Chalmers Corp. v. Lueck*, 471 U.S. 202, 213, 220, 105 S.Ct. 1904, 85 L.Ed.2d 206 (1985).

### A. Count III—Fraud and Misrepresentation

██ Count III of the Complaint alleges that Defendants committed fraud and misrepresentation when they falsely accused Plaintiff of throwing a trash can at a white employee and subsequently terminated him based on the false accusation. *See* Complaint, D.I. 7, at ¶¶ 59, 61. This state law claim concerns the grounds for and manner in which Defendants terminated Plaintiff and thus requires the Court to determine whether Defendants acted within the scope of the termination provisions of the CBA. For that reason, the Court concludes that Count III of Plaintiff's Complaint is preempted by Section 301 of the LMRA and thus must be dismissed.

### B. Count IV—Malicious Conspiracy to Cause Wrongful Termination

██ Count IV of the Complaint alleges malicious conspiracy to cause wrongful termination. Again, this claim involves an analysis of whether Defendants acted within the scope of the CBA when they terminated Plaintiff's employment. Therefore, the Court concludes that Count IV of Plaintiff's Complaint is preempted by Section 301 of the LMRA and thus must be dismissed.

### C. Count VI—Wrongful/Bad Faith Termination

██ Count VI of the Complaint alleges that Defendants terminated Plaintiff wrongfully or in bad faith. As the Court noted above, any inquiry into Defendants' actions during the disciplinary investigation and subsequent termination requires an analysis of whether Defendants acted within the scope of the CBA. Accordingly, the Court concludes that Count VI of Plaintiff's Complaint is preempted by Section 301 of the LMRA and thus must be dismissed.

### 3. Count V

██ Defendants contend that the defamation claim, Count V, should be dismissed because it is a state law claim that involves an interpretation of the collective bargaining agreement and thus is preempted by Section 301 of the LMRA. Additionally, Defendants contend that Count V should be dismissed for the following reasons: (1) Plaintiff fails to plead defamatory communication and publication, two necessary elements of a defamation claim; (2) any statements made in connection to the arbitration proceedings enjoy absolute privilege; and (3) oral defamation is not actionable without proof of specific monetary injury.

Plaintiff responds that the false statements were made outside the context of the CBA and are not preempted. Furthermore, Plaintiff notes that all of the necessary elements for a defamation claim are included in the Complaint.

The standard to establish preemption under Section 301 of the LMRA that was applied to Counts III, IV and VI also applies to Count V. In addition, a number of cases discuss more specific standards regarding preemption of state law defamation claims. These cases hold that defamation claims involving statements outside the context of a disciplinary investigation or grievance procedure and made to third parties having no connection to the proceedings are not preempted by Section 301 of the LMRA. *See Sangmeister v. Airborne Express, et al.,* 2001 WL 1003246, at *4, 2001 U.S. Dist. LEXIS 13466, at *13 (E.D.Pa. Aug. 30, 2001) (distinguishing statements made "in the context of a disciplinary investigation and those made out-

side such proceedings"); *Cini v. AM-TRAK,* 2001 WL 1659264, at *2, 2001 U.S. Dist. LEXIS 11170, at *5–6 (E.D. Pa. June 19, 2001) (dismissing defamation claim as preempted by Section 301 of LMRA, because plaintiff did not show that publication took place outside realm of disciplinary or grievance procedure); *Meier v. Hamilton Standard Electronic Systems, Inc.,* 748 F.Supp. 296, 299–300 (E.D.Pa. 1990) (holding that, because statements were made outside scope of disciplinary proceedings to people who had "no connection with the grievance procedures," defamation claim was not preempted by Section 301 of LMRA). Furthermore, in these cases, the courts noted that the collective bargaining agreements did not contain any relevant provisions regarding the actions alleged by plaintiffs. Specifically, the collective bargaining agreements did not provide any guidelines as to how and if information garnered during the investigation should be disseminated to third parties and did not provide a remedial procedure for defamation claims. *See Sangmeister,* 2001 WL 1003246, at *4, 2001 U.S. Dist. LEXIS 13466, at *14; *Meier,* 748 F.Supp. at 299–300.

In the instant case, Plaintiff states in his Complaint that statements were made to "his peers and the general community at large." D.I. 7, at ¶ 70. Although this statement is less than specific, the standard for a motion to dismiss is that "all allegations in the complaint and all reasonable inferences that can be drawn therefrom must be accepted as true and viewed in the light most favorable to the nonmoving party." *Sturm,* 835 F.2d at 1011. Accordingly, the Court construes Plaintiff's allegation as true that statements were made to the "general community" and concludes that the term "general community" includes third parties outside of the grievance process. Furthermore, as in *Meier* and *Sangmeister,* Defendants in the instant case do not point to any portion of the CBA that discusses dissemination of information gathered in the disciplinary process or that provides for a remedial procedure for defamation claims. This being the case, the Court concludes that the defamation claim presents issues outside of the scope of the CBA and is not preempted by Section 301 of the LMRA.

That the statements are alleged to have taken place outside the disciplinary process, and therefore outside of the arbitration procedure, defeats Defendants' contention that the statements are privileged, because only those statements made in the context of the arbitration proceeding are privileged. *See Nix v. Sawyer,* 466 A.2d 407 (Del.Super.1983) (statements made in the course of judicial proceedings enjoy absolute privilege).

Regarding Defendants' argument that Plaintiff has failed to plead all elements of a defamation claim, the Court concludes that Plaintiff has met his burden to survive a Motion to Dismiss. A plaintiff must plead five elements in a defamation action: (1) defamatory communication; (2) publication; (3) the communication refers to the plaintiff; (4) a third party's understanding of the communication's defamatory character; and (5) injury. *See Read v. Carpenter,* 1995 WL 945544, at *3, 1995 Del.Super. LEXIS 251, *7 (Del.Super. June 8, 1995). Defendants claim that Plaintiff has failed to plead defamatory communication, publication and specific monetary injury. Plaintiff alleges in paragraph 69 of his Complaint that "[d]efendants intentionally made false statements about the Plaintiff calling him dishonest, and questioning his professional ability before the public." The Court finds that at this stage of the case, this statement satisfies the defamatory statement element, despite its generality, because it alleges a

harmful and untrue statement was made. Plaintiff alleges in paragraph 70 of his Complaint that "[d]efendants have spread the [statements] regarding Plaintiff's character to his peers and the general community at large." The Court finds that this statement satisfies the publication element because it alleges third parties received the defamatory communication. Finally, Plaintiff alleges in paragraph 72 of his Complaint that he has suffered economic loss. Under a Motion to Dismiss standard, the Court finds that this allegation is sufficient to satisfy the specific monetary injury element.

For the above reasons, the Court concludes that Defendants' Motion to Dismiss should be denied as to Count V of Plaintiff's Complaint.

## CONCLUSION

For the reasons discussed, Defendants' Motion to Dismiss will be granted as to Counts I, III, IV and VI and will be denied as to Count V.

An appropriate Order will be entered.

## *ORDER*

At Wilmington this 29th day of January 2003, for the reasons set forth in the Memorandum Opinion issued this date;

IT IS HEREBY ORDERED that:

(1) Defendants' Motion to Dismiss (D.I.2) is *GRANTED* as to Counts I, III, IV and VI and *DENIED* as to Count V.

(2) Plaintiff's Motion to Amend (D.I.7) is *DENIED* as moot.